Jason LYONS, Plaintiff,

v.

SCITEX CORP., et al., Defendants.

No. 95 CIV. 10594(HB).

United States District Court,
S.D. New York.

Dec. 9, 1997.

Arthur N. Abbey, Abbey & Ellis, New York, NY, for Plaintiff.

Edward Brodsky, Steven M. Kayman, Proskauer Rose Goetz & Mendelsohn LLP, New York, NY, for Defendants.

## OPINION AND ORDER

BAER, District Judge.

Plaintiff brings this putative class action based on alleged violations of the Securities Exchange Act of 1934 on behalf of himself and all others who purchased Scitex stock from May 12, 1994 through November 9, 1995 (the "Class Period"). Plaintiff and defendants have reached a settlement and seek this Court's approval pursuant to Fed. R.Civ.P. 23(e). Plaintiff's counsel also makes an application for attorney's fees. For the reasons discussed below, the settlement is approved and the application for attorney's fees is granted in part.

## BACKGROUND

Plaintiff alleges that defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10–b(5) promulgated thereunder by failing to disclose to the public expected losses attributable to the Company's third-party financing arrangements. Specifically, plaintiff alleges that toward the end of 1993, defendant Igal Kohavi, a Scitex director, presented to the Board an analysis indicating suspected financial difficulties; that nonetheless the Company and the defendants continued to issue optimistic press releases; that the Company made a partial disclosure of the problems on July 19, 1995; and that the Company did not fully disclose the extent of its financial difficulty until November 9, 1995, when it reported a third quarter loss of $26.4 million.

Defendants moved to dismiss the complaint and for judgment on the pleadings. By Memorandum and Order dated August 21, 1996, I denied the motions with leave to renew following discovery. Specifically, I found that the complaint was sustained "by only the barest of margins," ordered defendants to produce relevant documents and permitted the deposition of Mr. Kohavi and one additional defendant. Following the production of documents and the depositions, the parties reached a settlement and are here now to seek Court approval pursuant to Fed. R.Civ.P. 23(e).

The proposed settlement would establish a fund of $2.875 million, to be funded by the defendants. From this fund, plaintiff's counsel's expenses and fees would be paid, as would expenses incurred in administering the settlement. The remainder would be distributed to class members who file valid proofs of claim. The proposed methodology for calculating each class member's loss is as follows. For class members who sold their shares during the class period, loss is calculated as the difference between the net purchase price of the shares and the net sales price (but no lower than the lowest price at which shares traded in November 1995). *See* Stipulation ¶ 8.6(a).[1] For class members who

---

[1] According to the information supplied by plaintiff, Scitex stock traded at a low of 12 on November 9, 1995 and the lowest it closed was at 15–1/16 on November 8, 1995. Accordingly, the calculation of loss for class members who sold their shares during the Class Period should be limited by the $12 or $15–1/16 figure. *See* Exh. A to Supp. Aff. of Joshua N. Rubin. Plaintiff's Memorandum of Law in Support of Final Approval of the Proposed Settlement, however, describes the loss calculation as utilizing a minimum figure of $16 for sales made during the Class Period, *see* Pl. Mem. at 37; *compare* Stipulation ¶ 8.6(a), so that those class members who sold shares during the class period below $16 would have their loss limited to the difference between purchase price and $16. Plaintiff does not explain this discrepancy and it is not the only one. This Court takes its oversight responsibilities seriously and expects plaintiff's counsel in

did not sell their shares during the Class Period, loss is calculated as the purchase price minus $16. That is, those class members who purchased Scitex shares during the class period for less than $16 would receive no recovery for those shares. The theory behind this loss calculation methodology is that $16 represents the correct "uninflated" value of Scitex shares during the class period. *See* Pl. Mem. at 31. The $16 figure was chosen because it reflects the approximate value of Scitex shares at the close of the class period, i.e. after the loss became public.

On May 14, 1997 I entered an order (the "hearing order") scheduling a hearing to determine the fairness, reasonableness and adequacy of the proposed settlement. The hearing order preliminarily approved the settlement as fair, without prejudice to the Court's final decision on this motion. The order also conditionally certified the class for purposes of settlement, "in accordance with Article II of the Stipulation" entered into by the parties. Article II of the Stipulation, in turn, provides that "Plaintiff will submit any documentation that may be necessary to support the entry of an order of Class certification."

The settlement hearing was held on August 21, 1997. In addition to counsel for plaintiff and defendants, two objectors were present: Solomon Borg, on behalf of various family members, and Robert Weinberg, on behalf of himself and his wife, Patricia. The objectors objected to the (i) the definition of the class period; (ii) the formula for determining loss pursuant to the proposed settlement; (iii) the adequacy of notice given to the class as to the details of the proposed settlement and (iv) the excessiveness of plaintiff's counsel's fee request. After hearing from counsel and the objectors, the Court expressed concern with the fact that plaintiff had failed to address the question of class certification, and particularly the Supreme Court's recent decision in *Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court also expressed concern with the lack of documentation supporting plaintiff's counsel's attorney's fee request; the lack of information regarding plaintiff's damage analysis; and the lack of information regarding the number of shares traded during the Class Period and what the proposed settlement would actually mean for class members in terms of return on each dollar of alleged loss—i.e., what share of each class member's loss they would recover pursuant to the parties' proposed loss calculation methodology.

As a consequence of these concerns, the plaintiff filed an affidavit and an additional memorandum of law addressing the appropriateness of class certification and an affidavit by plaintiff's counsel providing more detail as to the damage analysis, loss calculation and attorney's fees application. Plaintiff's counsel also provided, after repeated requests, information regarding the number of claimants and their total calculated losses.[2] Defendants and objectors also filed supplemental papers, with objectors picking up on the Court's concerns and objecting to plaintiff's standing to represent the class.

## DISCUSSION

Although this case is not governed by the recently-enacted Private Securities Litigation Reform Act ("PSLRA" or the "Act"),[3] the Court's consideration of the settlement agreement and application for attorney's fees is nonetheless informed by the public policy principles underlying certain of the Act's pro-

---

class action cases to provide the Court with a sufficient record to enable it to fulfill those responsibilities. Sometimes judges are criticized for the time they take to decide motions; sometimes, and the papers submitted here are a good example, that criticism is misdirected.

**2.** The Court notes that such information is critical to the Court's assessment of the settlement. The Court understands that the deadline to submit claims had not passed at the time the fairness hearing was held and that final figures regarding the number of claimants were therefore unavailable at that time. Some information regarding the number of claims filed at that point, the total number of possible claimants, the total number of shares sold during the class period, and other such information would nevertheless have been helpful had it been provided prior to the settlement hearing.

**3.** The PSLRA does not apply to actions commenced before and pending on its effective date, December 22, 1995. *See* P.L. 106–67, 109 Stat. 737, 758, § 108. This action was commenced on December 14, 1995.

visions. Three provisions are of particular importance: the Act's requirements (i) that the "most adequate plaintiff" be appointed as lead plaintiff, (ii) that certain notice be given to class members regarding any proposed settlement and (iii) that attorney's fees requests be considered in light of the total benefit to plaintiffs, as opposed to the total settlement fund. I address each of these provisions in the discussion below.

## I. Class Certification

The first hurdle that plaintiff must overcome is the issue of class certification. Pursuant to Rule 23, class actions can be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Furthermore, the court must find that:

questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). The Supreme Court has recently held that when a class is certified for settlement purposes only, the "specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Amchem,* —— U.S. at ——, 117 S.Ct. at 2248. The class at issue in *Amchem* purported to bind all current and future asbestos claimants and was deemed too unwieldy to satisfy Rule 23.

Clearly, most of the requirements of Rule 23 are met in this case. *See, e.g., Amchem,*

—— U.S. at ——, 117 S.Ct. at 2250 ("[p]redominance is a test readily met in certain cases alleging consumer or securities fraud"). What is not as clear is that plaintiff Jason Lyons' claims are "typical of the claims ... of the class" or that he "will fairly and adequately protect the interests of the class." Rule 23(a)(3)-(4). As noted above, plaintiff failed to address this issue, or any other aspect of the Rule 23 language, in his initial submission to the Court. In their subsequent submissions, plaintiff and defendants contend that Lyons is an adequate class representative whose claims are typical of the class.

Objectors argue to the contrary, pointing out that Lyons purchased Scitex shares only near the end of the Class Period, when he purchased 1,000 shares for $16.00 per share.[4] Lyons is thus non-representative in two respects. First, he purchased no shares in the period before July 19, 1995, that is prior to the partial disclosure. Second, he purchased no shares for more than the $16.00 cutoff price. Objector Weinberg, who both purchased shares prior to July 19, 1995 and who purchased shares for both more and less than $16.00 thus claims that plaintiff Lyons cannot adequately represent the class.

### A. Dates of Purchases

I address each of the objections to plaintiff's adequacy in turn, keeping in mind that "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem,* —— U.S. at —— – ——, 117 S.Ct. at 2250–51 (quotations omitted). I first address the contention that plaintiff cannot adequately represent the class because he did not purchase any shares prior to the partial disclosure in July. At least one district court has relied on such a distinction to deny appointment of proposed plaintiffs as lead plaintiffs under the PSLRA. *Ravens v. Iftikar,* 174 F.R.D. 651 (N.D.Cal.1997); *see* 15 U.S.C. § 78u–4(a)(3)(B) (discussing ap-

---

4. Lyons submitted an affidavit indicating he purchased the shares for $16.06. After Objector Weinberg pointed out that plaintiff's own submissions show that the "high" price for Scitex stock on the date in question was $16.00, *see* Exhibit A to Supp. Rubin Aff, plaintiff conceded

his purchase price was actually $16. This is yet another example of plaintiff's counsel's inattention to documenting the appropriateness of the settlement and cannot help but lend credence to the concerns articulately voiced by Mr. Weinberg.

pointment of lead plaintiff under PSLRA). The *Ravens* court held that the proposed plaintiffs in that case did not meet the statutory requirement of "most adequate plaintiff" because they did not purchase their stock until the class period was half over and after the defendant company had issued partial disclosures. *Id* . at *8–11. Thus, the court concluded that the proposed plaintiffs had not "transacted in the security during a time that the price of the security was affected by, or responded to, the alleged misstatement or misleading omission for which relief on behalf of the class is sought." *Id.* at *9.

While *Ravens* is instructive, the law under which this case arose avoids facing the question of whether plaintiff is the "most adequate plaintiff," but requires only that the plaintiff can adequately represent the interests of the class. In this regard, the Court notes, "[i]t is true, of course, that a securities class action does not require a named plaintiff who bought on each day of the class period." *Id.* While plaintiff is not the most adequate plaintiff, he is adequate.

In general, a plaintiff "adequately" represents a class when he or she does not have interests that are antagonistic to those of other class members. *See In re Joint E. & S. Dist. Asbestos Litig.,* 78 F.3d 764, 778 (2d Cir.1996); *In Re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992); *see also Amchem,* —— U.S. at ——, 117 S.Ct. at 2250 ("The adequacy inquiry ... serves to uncover conflicts of interest between named parties and the class they seek to represent."). Thus, in *Amchem,* the Court held that the named plaintiffs could not adequately represent "a single giant class" where the proposed class included persons with diverse medical conditions and potentially antagonistic interests. *Id.* at 2251. Such concerns are not evident here. Although persons who purchased stock prior to the partial disclosure may have slightly different interests than those who purchased after the partial disclosure, those differences do not rise to the level of the serious potential conflict of interest at issue in *Amchem.* Furthermore, the proposed settlement makes no distinction between the two possible sub-classes in

terms of distribution, another critical distinction between this case and *Amchem. See Amchem,* —— U.S. at ——, 117 S.Ct. at 2251. Accordingly, the Court holds that the fact that plaintiff did not purchase any stock prior to the partial disclosure does not disqualify him as an adequate representative of the class.

## B. Purchase Price

█ Objectors also object to plaintiff's adequacy because he purchased only 100 shares at a price of $16.00 per share. In light of the proposed settlement agreement's $16 cut-off for loss calculation purposes, plaintiff will recover nothing under the terms of the proposed settlement. Objectors' contentions in this regard find some support in plaintiff's papers, filed before they realized plaintiff's shares were purchased for $16.00 and not $16.06. Plaintiff alleged at that time that he was an adequate representative of the class because he "was damaged as a result defendants' conduct and was committed to conduct the vigorous prosecution required to redress those damages." Pl. Supp. Mem. at 12. Once they discovered their error, plaintiff's counsel took a different tack, arguing that plaintiff's *lack* of damages under the proposed settlement makes him an appropriate class representative and "demonstrat[es] plaintiff's compliance with his fiduciary duty of putting the interests of the class in a fair distribution before his own personal interest in obtaining the maximum personal recovery." Pl. Response to New Weinberg Objection at 3.

The Court holds that plaintiff is an adequate class representative. To hold otherwise would exalt form over substance as there is no indication that other class representatives could secure a more favorable resolution for the class. Decertifying the class and rejecting the settlement would only result. in prejudice to the class. New class representatives would have to be found and the whole negotiating process would begin anew, resulting in substantial delay with no indication that any better resolution could be achieved for class members. It is also likely that defendants would make good on their threats to renew their motion to dismiss.

The Court also finds that the class meets the requirements of Rule 23. The class is hereby certified for purposes of this settlement.

## II. Settlement Approval

 It is important to keep in mind that the resolution arrived at in a class action like this is allegedly arrived at through the adversarial process and thus produces a bargain with which both parties can live. It is not my role to determine whether or not the plaintiffs have received the best possible settlement. The role of the Court is "to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise business judgment in determining whether the proposed settlement is reasonable." *In Re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 595 (S.D.N.Y. 1992). The Court of Appeals has instructed that district courts evaluate a proposed settlement in light of the following criteria:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323–24 (2d Cir.1990) (quotation omitted). I examine each factor in turn.

### 1. *Complexity, Expense and Duration of Litigation*

Plaintiff's allegations of failure to disclose relate to writedowns Scitex knew it would have to take because it had over-valued its equipment inventory. Proving such allegations would require extensive and complex discovery and testimony regarding accounting practices and inventory. Proof of knowledge and a showing of causation would likely require expert accounting and perhaps other expert testimony. The litigation is also likely to be expensive and time consuming. Defendants are likely to move to dismiss again, adding both expense and delay. Moreover, many of the witnesses live in Israel, adding another layer of expense. In short, this is not a "simple" securities case, in which the defendants are alleged to have concealed some simple fact from the market. Rather, this case involves fairly complicated accounting principles and is likely to take weeks to try. Such complexity and expense mitigate in favor of the settlement.

### 2. *Reaction of the Class to the Settlement*

Only two objections to the settlement and two requests for exclusion, representing 530 Scitex shares, were received. In light of the more than 4,700 claims, these objections and exclusions represent an infinitesimal fraction of all Scitex shares. Such minimal objection supports approval of the settlement as fair. *Hammon v. Barry*, 752 F.Supp. 1087, 1092–93 (D.D.C.1990).

### 3. *Stage of the Proceedings and Discovery Completed*

Defendants' initial motion to dismiss was denied. In denying the motion, I allowed plaintiff to take two depositions and conduct document discovery. The parties opine that the depositions were taken and that plaintiff reviewed thousands of documents after the motion was decided. The depositions were of the key participants in the alleged fraud and were intended to give the parties (and the Court) a better sense of plaintiff's case. While discovery in this case was modest, it was limited by the Court's order. The Court finds that sufficient discovery was conducted to give the parties a good sense of the strengths and weaknesses of the case.

### 4. *Risk of Establishing Liability*

Plaintiff readily admits that establishing liability is particularly risky in security cases because of the difficulty of establishing scienter. Plaintiff barely survived defendants' initial motion to dismiss. Had the parties not settled (or were the Court to reject the settlement) it is likely defendants would have

renewed their motion. It is doubtful whether plaintiff could have survived such a motion, let alone established the requisite scienter at trial. Accordingly, this factor favors approval of the settlement.

### 5. *Risk of Establishing Damages*

Plaintiff faced a significant risk of failing to prove any damages as a result of the misrepresentations. The Scitex share price went up the day after the close of the class period, and while this is accounted for in part by the drift downward during the class period it hardly presages an easy victory. In short, establishing damages would be harder than usual and any showing of damages would likely have required expert testimony. *See In 're Warner Communications Sec. Litig.,* 618 F.Supp. 735, 744–45 (S.D.N.Y.1985), *aff'd,* 798 F.2d 35 (2d Cir.1986). This factor too supports approval of the settlement.

### 6. *Risk of Maintaining Class Action Through Trial*

There is no indication that a class action could not have been maintained through trial. Securities fraud cases are particularly well suited for class action status. This factor is therefore neutral.[5]

### 7. *Ability of Defendants to Withstand Greater Judgment*

Neither party has addressed this issue. The Court must presume that as a large corporation, Scitex would be able to withstand a greater judgment than the $2.875 million settlement. This factor mitigates against approval of the settlement.

### 8–9. *Reasonableness of Settlement*

The eighth and ninth factors require the Court to assess the range of reasonableness of the settlement in light of the best possible recovery plaintiff could expect and in light of the attendant risks of litigation. In making this evaluation, the Court must keep in mind "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.... In fact there is no reason why a satisfactory settlement could not amount to a hundredth or thousandth part of a single percent of the potential recovery." *Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 & n. 2 (2d Cir.1974).

At the Court's prompting, plaintiff's counsel has provided a damages analysis showing $45 million in losses. The analysis consists of a single chart and an affidavit from plaintiff's counsel describing the nature of the analysis performed. The analysis computes the total losses to all stockholders who purchased shares during the class period. In computing these losses, the uninflated purchase price is subtracted from the inflated purchase price, on the theory that the inflation resulted from defendants' misrepresentations and that the difference is the amount of loss to any given shareholder. Because some shares purchased during the class period were also sold during the class period—at inflated prices—the analysis used a "proportional decay" model to approximate the actual trading of Scitex stock during the period in question. The model purports to estimate the number of shares purchased on a given day that are subsequently sold during the class period by utilizing a formula based on the ratio of the total volume of shares traded to the total volume of shares available to be traded. Once the approximate volume of shares is established in this way, the total loss estimate is obtained by multiplying the volume by the amount by which each share is inflated. Two different measures of per-share inflation were utilized for this calculation: one based on the assumption that Scitex shares were inflated by $2.4375 during the class period and the other based on the assumption that shares were inflated by 11% during the class period. These two different assumptions yielded loss estimates of $42.9 million and $47.8 million respectfully, for an average loss estimate of over $45 million. Plaintiff concedes that the parties did not

---

**5.** The Court notes that the question as to whether the case could be maintained as a class action through trial is different from the question, discussed above, as to whether plaintiff is an adequate class representative. Questions as to plaintiff's adequacy do not undermine the appropriateness of class action status.

reach formal expert discovery on damages. The Court finds the submitted analysis sufficient to evaluate the sufficiency of the settlement. The $2.875 million settlement represents 6.4% of plaintiffs' $45 million calculated loss.

At the Court's request, plaintiff has also provided data regarding the claims filed with the Claims Administrator as of November 10, 1997. Analogously, the PSLRA requires that notice of a proposed settlement to a class include, *inter alia*, the settlement amount determined on an average per share basis. *See* 15 U.S.C. § 78u–4(a)(7)(A); 15 U.S.C. § 77z–1(a)(7)(A). Like the information required by the PSLRA, the Court sought this information because it is essential to an understanding of what the settlement means for class members in real terms. Indeed, the Court has withheld this decision so as to be able to review the claim information.

While the claim information provided is not complete, as there is still some dispute regarding the validity of certain later-filed claims, the data does show in general the recovery plaintiffs can expect pursuant to the proposed settlement. Some 4,744 claims have been filed representing a "Recognized Loss" [6] of some $25 million dollars. As the settlement fund is $2.875 million, plaintiffs who have filed proofs of claim will recover approximately 11% of their loss.

Plaintiffs' recovery—whether viewed as 6% of total losses or 11% of submitted losses—is reasonable in light of the risks attendant to the litigation. There is no guarantee plaintiff would prevail at trial or that the jury would accept his loss calculation. Defendants, no doubt, would have presented evidence in support of their contention that plaintiffs suffered no loss.

Having considered the merits of the case and the proposed settlement, I find that under the circumstances the settlement represents a fair and adequate settlement for the plaintiff class. The settlement is therefore approved.

### III. Attorney's Fees

█ Plaintiff's counsel also seeks Court approval for an award of attorney's fees and costs totalling $948,750.00. This amount represents approximately 33% of the total settlement fund. Plaintiff's counsel has also submitted time sheets and a summary of their expenses.[7] These exhibits show that plaintiff's counsel spent some 969 hours of attorney time and incurred $65,205.03 in expenses.[8] According to plaintiff's counsel's self-proclaimed billing rates, the attorney fees total $302,402.50.

Plaintiff's counsel argues that the close to $1 million fee award they seek is appropriate both under the "percentage-of-recovery" and "lodestar" approaches. Plaintiff cites cases from the First, Third, Sixth, Seventh, Ninth, Tenth, Eleventh and D.C. Circuits that have approved of the percentage-of-recovery approach. While the Second Circuit disapproved of the percentage method in *Grinnell,* 495 F.2d at 471, the status of *Grinnell* is unclear and the "technique used to determine the adequacy of attorneys' fees in common fund class actions presently varies within the Southern District of New York. Some judges prefer the lodestar method while others find the percentage-of-recovery method to be superior." *Dubin v. E.F. Hutton Group, Inc.,* 878 F.Supp. 616, 621 (S.D.N.Y.1995); *see also*

---

6. "Recognized Loss" is a defined term in the settlement agreement representing the loss calculation described above: purchase price minus the larger of sale price or $16.

7. In keeping with earlier-voiced concerns, plaintiff's counsel failed to properly document their attorney's fee request until the Court requested supporting documentation.

8. Plaintiff's counsel has not provided any documentary support for their claim of expenses other than a chart summarizing expenses by category (travel & lodging, meetings & conferences, translations, etc.). This makes it difficult for the Court to assess the propriety of these expenses. The Court is particularly alarmed at the following expense groups: Word Processing ($8,032.00) and Paralegal ($7,458.75). The Word Processing charge suggests billing for secretarial time. As for paralegal charges, plaintiff's counsel has provided no basis by which the Court can judge the reasonableness of this expense, such as time sheets, projects addresses or billing rates. The Court provided counsel an opportunity to supplement the record with respect to their fee request following the hearing. Counsel did so with respect to the attorney's fees; it did not, however, provide any additional documentation relating to expenses.

*In re Gulf Oil,* 142 F.R.D. 588, 596–97 (S.D.N.Y.1992) (using percentage method). While I discuss both methods below, I note that the Second Circuit has recently held that the lodestar method is appropriate for determining attorney's fees for prevailing parties in Title VII cases, and I keep that guidance in mind as well. *Quaratino v. Tiffany & Co.,* 129 F.3d 702 (2d Cir.1997).

Before determining whether plaintiff's counsel's fee request is reasonable, the Court must first determine the benchmark against which the fee request must be measured. The PSLRA is instructive in this regard as well. The Act states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for plaintiff shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." *See* 15 U.S.C. § 78u–4(a)(6); 15 U.S.C. § 77z–1(a)(6). This provision is intended to prevent the payment of attorney's fees based on an inflated settlement figure, where a large part of the settlement is later returned to the coffers of the settling defendant because of a low number of claims. Before awarding fees, therefore, the Court must determine what portion of the settlement fund will actually be paid to plaintiffs. Based on the claim information discussed above, it is apparent that the entire settlement fund will be paid out. That is, no money will revert back to Scitex. The full $2.875 million is therefore the appropriate figure against which any attorney's fee award must be measured.

Plaintiff argues that the 33% figure is in line with market rates for contingent fee cases and that the fee award should mirror the market. While plaintiff cites cases in which 33% was awarded, other courts have noted that between 20%–30% is a fair fee, with 25% as a "bench mark". *In re Crazy Eddie Sec. Litig.,* 824 F.Supp. 320, 326 (E.D.N.Y.1993); *see also In re Union Carbide Consumer Prod. Bus. Sec. Litig.,* 724 F.Supp. 160, 170 (S.D.N.Y.1989) (relying on lodestar method but noting that common fund attorney awards in this district typically range from 15% to 30%).

In assessing the appropriate percentage of the fund, the Court must also keep in mind the overall magnitude of the award sought as compared to the recovery for the average plaintiff. Here, plaintiff's counsel seeks close to $1 million in fees. Named plaintiff, by contrast, will recover nothing. Other plaintiffs, whose recovery comes from the same pot as plaintiff's counsel's fees, will recover at most 6%–11% of their losses. *See supra.* These figures will be reduced dollar for dollar for every dollar that is awarded plaintiff's counsel.

Plaintiff argues that the lodestar method also supports their fee request as reasonable. Here, plaintiff's proposed lodestar figure is $302,402.50, representing the hours spent by plaintiff's attorneys multiplied by their hourly rate. The figure represents the time of four partners (approximately 400 hours) and one associate (approximately 560 hours). The billing rates for the five attorneys are: $495, $395, $395, $375 and $210 per hour. Counsel correctly note that the appropriate hourly rate to be used in the lodestar calculation is the "market" rate. *Cf. Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Counsel claim the above rates are "competitive market hourly rates in their respective legal communities for cases involving complex class action securities litigation," Pl. Br. at 54. While they may be correct, they provide no evidentiary support whatsoever for this contention. They also failed to respond to Objectors' question at the fairness hearing regarding who actually pays these alleged rates, if counsel specializes in securities class actions in which they are paid on a contingent basis.

While the Court does not profess much expertise in the area, the New York State Bar Association ("NYSBA") 1997 Desktop Reference on the Economics of Law Practice in New York states that the median hourly billing rate for litigation attorneys in New York City is $200 per hour and the median hourly rate for all attorneys in the City—including all areas of practice—is $225. *Id.* at 3. In light of plaintiff's counsel's failure to provide any support for their claimed billing rate, the Court adopts the $225/hour figure reported by the NYSBA as the applicable

"market" rate. Recalculating plaintiff's counsel's hours at this rate results in a lodestar figure of $156,600.

The fee request represents a figure 6.06 times the lodestar amount.[9] Courts often multiply the lodestar amount by a multiplier to account for the risk plaintiff's counsel assumed in prosecuting the action. Plaintiff has cited cases approving multipliers of between 3 and 4 times the loadstar value, believing this to be within the range of their request. Other cases, however, have used smaller multipliers. *See, e.g., In re Union Carbide,* 724 F.Supp. at 170 (using multipliers of 2.3 and 1.5); *In re Crazy Eddie,* 824 F.Supp. at 327 (1.72 multiplier).

█ Applying a hybrid of the percentage of recovery and lodestar method, I find that a fee of $300,000 is fair compensation. This amount represents 10.4% of the settlement fund and 1.92 times the revised lodestar amount. Such a multiplier is in line with other fee awards relying on the lodestar method. Although the 10% figure is low when compared to other fee awards utilizing solely the percentage-of-recovery analysis, it is appropriate here where class members will recover only between 6.4% to 11% of their losses.

## CONCLUSION

For the reasons discussed above, the Court certifies the class for settlement purposes and approves the proposed settlement as fair. The Court grants plaintiff's counsel's attorney's fee and expense request in the amount of $300,000.

**SO ORDERED.**

---

9. Based on plaintiff's counsel's claimed billing rate the multiplier would be 3.14.