**In re OXFORD HEALTH PLANS, INC. SECURITIES LITIGATION**

**No. MDL 1222(CLB).**

United States District Court,
S.D. New York.

Feb. 11, 2003.

---

Martin D. Chitwood, Alan R. Perry, Jr., Chitwood & Harley, Atlanta, GA, Melvin I. Weiss, Patricia M. Hynes, Milberg Weiss Bershad Hynes & Lerach, LLP, New York City, for Plaintiffs.

Gary P. Naftalis, Barry H. Berke, Kramer Lenn Naftalis & Frankel LLP, New York City, for Individual Defendant Andrew Camidy.

Peter J. Beshar, Jennifer L. Conn, Gibson, Dunn & Crutcher, LLP, New York City, for Individual Defendant Steve Wiggins.

Joseph Baio, Kelly M. Hnatt, Antonio Yamez, Jr., Wilkie Farr & Gallagher, New York City, for Defendant KPMG.

Dan A. Bailey, Arter & Hadden, Columbus, OH, Kenneth A. Sagat, D'Amoto & Lynch, New York City, William P. Harrington, Bleakley Platt & Schmidt, White Plains, NY, for Defendants Excess Ins. Carriers.

Gandolfo DiBlasi, Robert J. Giuffra, Jr., Mark Coyne, Sullivan & Cromwell, New York City, for Defendants Oxford.

## Memorandum and Order

BRIEANT, District Judge.

On January 28, 2003, certain Defendants in this consolidated private securities class action filed a document described as a Motion to "bifurcate the trial for damages and reliance issues." The motion, now joined in by all Defendants, was heard on January 30, 2003 and fully submitted for decision on February 7, 2003. The motion seeks more than mere bifurcation; it is a broadside attack on the long existing assumptions and procedures relating to trials of class action litigation generally, and specifically securities fraud class actions.

Familiarity of the reader with prior proceedings in this litigation is assumed. Specifically, familiarity is assumed with this Court's decision. *In re Oxford Health Plans, Inc. Securities Litigation,* 191 F.R.D. 369 (S.D.N.Y.2000). This case is controlled by the Private Securities Litigation Reform Act of 1995 (the PSLRA), 15 U.S.C. § 78u–4.

As a result of this Court's decision dated February 28, 2000, a class action was declared. The class consists of persons or entities who purchased Oxford Health Plans, Inc. common stock or purchased Oxford call options or sold Oxford put options during the period November 6, 1996 through and including December 9, 1997.

This Court designated three separate Plaintiffs as class representatives. Together the class representatives, in their capacity as Plaintiffs, control a very significant volume of shares as to which damages will be claimed.[1] Notwithstanding the length of the class period, a principal Co-defendant, accounting firm KPMG, is liable only to persons who purchased Ox-

---

1. One of the class representatives is the State of Colorado pension fund known as ColPERA. We were told at oral argument that approximately 70% of the affected shares of Oxford were purchased by institutional investors.

ford stock after February 18, 1997. Its liability, if any, is based only on an audit report issued on that date and said to contain misleading omissions of material fact.

The shares of Oxford were publicly traded at all relevant times, and this case is being tried on the theory of "fraud on the market". Therefore, with possible theoretical exceptions not believed to exist in the case, there can be no disputed issue of reliance as to absent class members: "It has been held that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'" *Basic, Inc. v. Levinson,* 485 U.S. 224, 246–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quoting *Schlanger v. Four-Phase Systems, Inc.,* 555 F.Supp. 535, 538 (S.D.N.Y.1982)).

It is this Court's understanding that Plaintiffs propose to prove to the trial jury several events, separate as to time, constituting material misleading omissions or false representations; and to prove the inflation in market value per share caused thereby on the effective dates. Plaintiffs and presumably also Defendants will present evidence as to whether there were any other contemporaneous secular changes which combined with disclosure of the fraud to cause the devaluation of the price of the stock following the Denouement. (See the "negative causation" defense. *McMahan & Co. v. Wherehouse Enterainment, Inc.,* 65 F.3d 1044, 1048 (2d Cir. 1995)). The damages of a purchaser will be computed by the so-called Lookback formula which provides that:

> except as provided in paragraph (2), in any private action arising under this chapter in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90–day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u–4 (West Group 2002).

Probably the closing prices on each trading day during the so-called 90 day "Lookback provision" under § 78u–4(e)(1) can be stipulated. If they cannot be stipulated, the jury should be requested by a special interrogatory to establish the closing prices on each of the trading days during that period.

The essential issue tendered by this motion is, in effect, Defendants' contention that the PSLRA bars an award at trial of aggregate class wide damages in order to create a common fund for the non-party absent class members. This challenged practice was traditionally followed in securities class action litigation both before and after the PSLRA. The first and only case holding otherwise appears to be *Bell v. Fore Systems, Inc.,* an unreported decision of the Western District of Pennsylvania, issued August 2, 2002, under Docket # 97–1265.

Counsel for Plaintiff class representatives urge that *Bell* was "wrongly decided". As this Court has previously noted, principles of *stare decisis* do not require this Court to give any deference to decisions of another district judge. *See 28 James William Moore, et al.; Moore's Federal Practice* § 134.02[1][D] ("a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case") cited *In re Oxford Health Plans, Inc. Securities Litigation,* 191 F.R.D. 369,

377 (S.D.N.Y.2000). See also *Gasperini v. Center for the Humanities*, 518 U.S. 415, 430 n. 10, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Accordingly, this Court need not hold that *Bell* was wrongly decided in order to decline to follow it.[2]

We should hesitate to cast aside years of prior practice experience with class action litigation, stampeded by a single district court decision in another circuit. The Court in *Bell* simply concluded that reliance by a trial jury on the trading models traditionally used to determine total damages of the absent class members as a group, was, as a matter of law, inconsistent with the limitation on an individual purchaser's damages contained in the PLSRA. The initial apparent difficulty with this legal conclusion is that the reasons relied upon by the court in *Bell*, and by Defendants in their argument of this motion, were all present and available to litigants in such cases long prior to the enactment of PLSRA. There is nothing new about the legal theory of the "Lookback" provisions found in 15 U.S.C. Section 78u–4(e) or the limitations of a purchaser's damages found in Section 78bb (a). The damages of a purchaser were always understood to be the difference between the purchase price and the true value of the shares (adjusted for any negative causation) as disclosed after the revelation of the fraud to the public, followed by a reasonable period (usually no longer than a week or ten days) during which the market took cognizance of the fraud and the publicly traded price was presumed, under the "efficient market" hypothesis endorsed by the Supreme Court in *Basic*, to reflect an adjustment for the fraud. If the plaintiff or absent class member retained the security after the period of time within which the efficient market adjusted for the revelation of the fraud, he or she made a new investment decision, and could not collect damages for any further drop in the market price. The securities holder who sold immediately after the revelation, and before the price bottomed out, was also limited to the difference between the inflated value and the actual price at which he or she sold. All these basic rules were enshrined in the case law prior to the PSLRA. They remain valid. The existence of these rules was never held to require bifurcation, or prevent an award of lump sum damages to a class of purchasers to be administered by the Court as a common fund for their benefit.

The PSLRA amendment relied on does nothing more that is new, except to extend to a ninety day period after the revelation, the prior period of time, generally determined as an issue of fact in each case, during which the efficient market was presumed to have adjusted the price of the security to its real value absent the fraud. The statute contains an express exception for a sale or repurchase during the ninety day period, in which case the Plaintiffs' damages shall not exceed the difference between the actual price, paid or received, and the mean trading price of the security during the Lookback period. This is also consistent with prior case law. The only change effected is a substantial enlargement of the time period during which the efficient market is deemed to have recognized and adjusted for the fraud, and has begun to reflect (again) the "true value" of the security. Common sense suggests that the sudden revelation of a fraud may cause a momentary overcorrection in market price, and dearth of potential buyers

---

2. That the *Bell* case states new and questionable legal conclusions is commendably recognized by the author, who certified the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), on August 2, 2002. Counsel for the *Bell* plaintiffs did not elect to seek the immediate appellate review authorized by the district judge.

may exist for a longer period while whatever cloud the revelation placed on the issuer, dissipates. Assuming, as we do, that the Court in *Bell* has correctly construed the Lookback provision in accordance with its plain meaning, it represents no significant change from the law as it previously existed, except that determining the time period during which the efficient market adjusts from the inflated value to the true value, which used to be measured in each case as an issue of fact, has now, by statute been made an issue of law the same in every case. Federal securities law has never permitted an individual person to recover in excess of his or her actual damages. The statute merely modifies slightly the means by which actual damages are determined. Its enactment should not be deemed to effect such a drastic change in the conduct of class action litigation as now claimed.

The decision in *Bell* conflates "plaintiff" with "absent class member represented by plaintiff[,]" holding that "the text of the statute applies the limitation on damages to 'the plaintiff[.]' We construe this term to mean each person who would be part of the class." *Bell* at p. 5. There is no basis to do this. A "plaintiff" is a party to the lawsuit. Absent class members whose interests are represented by a Plaintiff are not parties to the lawsuit. Congress when it uses terms of art such as "plaintiff" should be deemed to denote exactly that, and not non-party class members.

The plain language of Rule 23 itself distinguishes between *parties* and members of the class (Rule 23(a)(4)) "the representative parties will fairly and adequately protect the interests of the class"; Rule 23(a)(1) "the class is so numerous that joinder of all members is impracticable." See *In re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 164 (2d Cir.1987) (Absent class members are not parties to

the litigation for purposes of determining subject matter jurisdiction.); *In re Certain Underwriter Defendants*, 294 F.3d 297, 302 (2d Cir.2002) (A putative class member is not a "party" to a proceeding for purposes of judicial recusal.). See also *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

Before and after the enactment of the PSLRA, absent class members in securities fraud cases have been awarded a common fund of damages computed by the trier of the fact, based usually on expert testimony, while the named Plaintiffs' damages have been computed and awarded separately. See *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 WL 310352 (S.D.N.Y.2000); *In re Cendant Corp. Sec. Litig.*, 109 F.Supp.2d 235, 272 (D.N.J.2000); *Lyons v. Scitex Corp.*, 987 F.Supp. 271, 277–78 (S.D.N.Y.1997), see also *Robbins v. Deloitte Touche*, No. 90–896–Civ–J–10 (M.D.Fla. Feb. 13, 1995) (testimony of plaintiffs' expert based on proportional trading model admitted at trial), *rev'd on other grounds*, 116 F.3d 1441 (11th Cir.1997). Apart from the fact this procedure has long been standard practice and continues to be so after *Bell*, there are sound prudential reasons for continuity. These include the need for a final judgment for appellate review, which eventuates from the jury's verdict, as well as the fact that the common fund may be a source for funding the litigation expenses of the class representatives, and the administration of the claims process.

It is no objection to following prior procedures that certain members of the class may neglect to file proofs of claim. This is true in any case and this Court perceives no reason why the amount of non-filers cannot be estimated. As noted earlier, this particular class, we are told, consists

of approximately 70 percent institutional investors who are ordinarily expected to be more diligent in enforcing their economic rights than the "ribbon clerks" for whose benefit the concept of a class action was developed. There is no loss to Defendants who clearly, both before and after the PLSRA, are entitled to a refund of any parts of the common fund not actually expended or distributed. *See Boeing Company v. Van Gemert*, 444 U.S. 472, 482, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (assuming a reversion of unclaimed shares of absent class members in common fund recovered in securities action).

Expressed more briefly, the enactment of the PSLRA should effect no basic change in the practice of fixing the damages of the absent class members in a securities class action. Under prior law and now, no class member purchaser could recover more than the difference between the price paid and the security's true value, defined as the price at which it would have sold absent the alleged fraudulent misrepresentations or omissions of material fact. *In re Executive Telecard Ltd. Sec. Litigation*, 979 F.Supp. 1021, 1025 (S.D.N.Y.1997) (citing *Affiliated Ute Citizens of Utah v. the United States*, 406 U.S. 128, 154–55, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)).

The motion to bifurcate is denied. The Court expresses no opinion as to the validity or admissibility of Plaintiffs' proposed damages calculation, which is understood to be the subject of another motion to be heard later.

SO ORDERED.