**In re OXFORD HEALTH PLANS, INC., Securities Litigation.**

**No. MDL–1222 (CLB).**

United States District Court, S.D. New York.

Feb. 28, 2000.

---

12. July 26, 1996, is the date of the Solicitation and October 31, 1996, is the date the Solicitation terminated.

[CLASS ACTION MOTION]

BRIEANT, District Judge.

By motion filed on August 27, 1999 and heard on January 18, 2000, Lead Plaintiffs in this securities class action litigation controlled by the Private Securities Litigation Reform Act of 1995 (the PSLRA), move for class certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) for a class consisting of:

> all persons or entities who purchased Oxford Health Plans, Inc. common stock, or purchased Oxford call options or sold Oxford put options, during the period from November 6, 1996 through and including December 9, 1997 (the "Class Period").

*See* Notice of Motion for Class Certification. Lead Plaintiffs also move for certification of a subclass consisting of:

> all persons or entities who purchased Oxford common stock contemporaneously with sales of such stock by Individual Defendants Stephen F. Wiggins, William M. Sullivan, Andrew B. Cassidy, Brendan R. Shanahan, Benjamin H. Safirstein, Robert M. Smoler, Robert B. Milligan, David A. Finkel, Jeffrey H. Boyd and Thomas A. Travers (the "20A Sub–Class") during the Class Period.

*Id.* When this motion was filed, the Class Representatives to act pursuant to Rule 23 F.R.Civ.P. were proposed in accordance with the tripartite structure of lead plaintiffs established by this Court in its prior decision, *In Re Oxford Health Plans, Inc.*, 182 F.R.D. 42 (S.D.N.Y.1998). Familiarity of the reader with that decision is assumed. Specifically, Plaintiffs proposed Gary Weber (as a representative of the "Vogel Group"), PBHG Funds, ColPERA, and Al Tawil (as a representative of options traders) to serve as Class Representatives, and Weber, PBHG, and ColPERA to serve as Class Representatives for the 20A Sub–Class. On November 29, 1999, with leave of this Court, Mr. Weber and four of the five PBHG Funds withdrew their applications for Class Representative status.

By motion filed February 3, 2000, and heard on February 24, 2000, North River Trading Co., LLC, ("North River") a Plain-

tiff not previously designated as a Lead Plaintiff under the PSLRA moved for an order to appoint it one of the Lead Plaintiffs, to add its law firm to the three law firms previously selected as Lead Counsel for Plaintiffs and also to be certified as a Class Representative.

As noted earlier, on July 15, 1998, this Court appointed three groups of plaintiffs to serve as lead plaintiffs. The three groups consisted of 1) three individuals (Gary Weber, Daniel Hurley, and Michael Sabbia (collectively, the "Vogel Group"), 2) Public Employee's Retirement Association of Colorado ("ColPERA"); and 3) five mutual funds under the control of PBHG Funds, Inc. "PBHG"). When this Court appointed three sets of co-lead plaintiffs, it "reserved the right to alter this structure at any time and for any reason, and will do so if it finds that the progress of the litigation is being delayed . . . or if the structure established proves detrimental, in any way, to the best interests of the class." *In re Oxford Health Plans, Inc.*, 182 F.R.D. 42 at 51 (S.D.N.Y.1998). Withdrawal on November 29, 1999 of Mr. Gary Weber, since neither Mr. Sabbia nor Mr. Hurley had sought to serve as a Class Representative, left no member of the Lead Plaintiff Vogel Group to serve as a Class Representative.

*Certification of a Class*

For certification of a class, FRCP 23(a) requires (1) that the class be so numerous that joinder of all members is impracticable ("Numerosity"); (2) that there are questions of law or fact common to the class ("Commonality"); (3) that the claims of the representative plaintiff are typical of the claims of the class ("Typicality"); and (4) that the representative plaintiff fairly and adequately protect the interests of the class ("Adequacy"). In addition, Rule 23(b) of the Federal Rules of Civil Procedure requires in a case of this sort that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Plaintiffs bear the burden of establishing compliance with the requirements of Rule 23. A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). With respect to class action lawsuits that allege securities fraud, our Court of Appeals has held that "[i]n light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir.1990). Furthermore, our Court of Appeals has directed district courts to avoid applying Rule 23 under a restrictive interpretation. *See Korn v. Franchard Corp.*, 456 F.2d 1206, 1208–09 (2d Cir.1972); *Green v. Wolf Corp.*, 406 F.2d 291, 298, 301 (2d Cir.1968). Proposed class representatives must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4); *See Also In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18 (2d Cir. 1986).

As to Lead Plaintiff ColPERA, Defendants have withdrawn their contention that it does not satisfy requirements of Rule 23. We note that the PSLRA contains an express requirement that a Lead Plaintiff "otherwise satisfies the requirements of Rule 23." As a threshold matter, Defendants point out, and the Court agrees, that the appointment of lead plaintiffs occurring as it does in advance of class discovery, is not a final ruling on their appropriateness as Class Representatives. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 111 n. 21 (D.N.J.1999). The proposed class and Class Representatives are to be reviewed according to the standards of Rule 23, without any deference to the earlier determinations made in the appointment of Lead Plaintiffs. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc).

In an earlier proceeding, this Court expressed its purpose in appointing ColPERA, the Vogel Group, and PBHG as lead plaintiffs. "This structure provides the proposed class with the substantial benefits of joint decision making." *In re Oxford Health*

**374**

*Plans, Inc.*, 182 F.R.D. 42 at 45. Further this Court reiterated that "the lead plaintiff provisions (of the PSLRA) were 'intended to encourage the most capable *representatives* of the plaintiff class to exercise supervision and control of the lawyers for the class.'" *Id.* (quoting H.R. No.104–369, at 32 (1995)).

Defendants contend that recent developments, the withdrawal of Mr. Weber and of four of the five PBHG funds, have "toppled the very structure this Court so carefully erected." Damaged, perhaps it is, but not toppled. This Court need do no more now than satisfy the well established criteria for the certification of a class or subclass and appoint qualified class representatives to act under Rule 23. Accordingly, the Court now addresses the issue of class certification on the merits in accordance with Rule 23.

*Numerosity*

◼ The Proposed Class meets the numerosity requirement. Rule 23(a)(1) requires that the "class [be] so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The rule does not require that joinder of all parties is impossible, only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." "Impracticability means difficulty or inconvenience of joinder; the rule does not require impossibility of joinder." *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 508 (S.D.N.Y.1996)(Sweet, J.) (citations omitted). Precise enumeration of the members of a class is not necessary. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290–291 (2d Cir.1992). Here, because Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands. "Lack of knowledge of the exact number of persons affected is not a bar where the Defendants alone have access to such data." *Id.* (citations omitted). The Numerosity requirement is satisfied.

*Commonality*

◼ The Proposed Class and subclasses also meet the commonality requirement. Rule 23(a)(2) requires that for a class to be certified and class representatives appointed, there must be "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). The Rule does not require specific commonalities, and commonality can be inferred from the facts or circumstances. "Common questions may predominate where there exists a common course of conduct even though there is not a complete identity of facts." *Shankroff v. Advest, Inc.*, 112 F.R.D. 190, 192–193 (S.D.N.Y.1986)(Kram, J.) (citations omitted). Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail.

◼ This Court has held that cases such as this action are "essentially course of conduct cases" because "the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication." *In re Baldwin–United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y.1986). Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met. *Id.; See Also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Here, common questions of law and fact exist as to whether or not Defendants' scheme and common course of conduct to misrepresent and conceal from the investing public material facts regarding, among other things, Oxford's business and financial condition violated Sections 10(b), 20(a) and 20(A) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) and 78t–1 and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated under the Exchange Act. Specifically, Plaintiffs allege and this Court finds that at least the following questions of law or fact are common to all plaintiffs in the proposed class: (a) Whether Defendants violated the federal securities laws as alleged in the complaint; (b) Whether documents, press releases, and other statements disseminated to the investing public and Oxford's shareholders during the Class Period misrepresented or omitted material facts about the business, finances, financial condition and prospects of Oxford; (c) Whether Defendants participated in and pursued the common course of con-

duct complained of in the complaint; (d) Whether Defendants acted knowingly or recklessly in making the materially false and misleading statements as alleged in the complaint, and (e) Whether Plaintiffs and the other members of the Class have sustained damages and the appropriate measure thereof.

With respect to the 20A Sub–Class, the common questions of law and fact include:(a) Whether the federal securities laws were violated by the Individual Defendants' acts as alleged (b) Whether the Individual Defendants sold their Oxford common stock while in possession of material non-public adverse information about the Company; (c) Whether the Individual Defendants' sales were contemporaneous with purchases by the 20A Sub–Class members; and (d) Whether damages have been sustained and the appropriate measure thereof. *See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification. In sum, there are sufficient common questions of fact and law to satisfy this requirement.

*Typicality*

■■■ The Proposed Class and Class Representatives also meet the Typicality requirement and Lead Plaintiffs Hurley and Sabbia appear to do so, based on the facts currently known to the Court. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). Typicality under Rule 23 requires that a class representative "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Daniels v. Amerco*, 1983–1 Trade Cas. P 65, 274 (S.D.N.Y.1983); *See Also, In re Nasdaq*, 169 F.R.D. 493, 510. Here, Typicality focuses on the same or similar injuries arising out of or being caused by Defendants' alleged wrongful course of conduct to "misrepresent and conceal from the investing public material facts regarding ... Oxford's business and financial condition." Plaintiffs' Memorandum of Law at 1–2.

■■■ Typicality does not require that the situations of the named representatives

and the class members be identical. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y.1992)(Edelstein, J.). The Typicality requirement is satisfied where, as here, claims of representative plaintiffs arise from same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives. *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

The proposed Class Representatives in this action—ColPERA, PBHG Fund, and Al Tawil, as well as Lead Plaintiffs Hurley and Sabbia, are purchasers and sellers of class securities and/or calls and put options of Oxford stock during the proposed class period.

*PBHG as a Class Representative*

Defendants object to designation of PBHG as a Class Representative. They contend that the claims of the remaining PBHG fund are atypical because PBHG utilized "proprietary trading methodology" and inconsistent strategies for trading Oxford stock which are atypical of the class.

■■■ Starting initially with five, and later six of its separate funds which claimed losses of more than $4.3 Million, as Lead Plaintiffs, PBHG has now proposed as a Class Representative just one of its funds, "PBHG Growth II Portfolio", which has only $65,000 in claimed losses. Contrasted with the position of Lead Plaintiff as to which the PSLRA creates a statutory presumption related to the amount of the loss involved, there is no requirement in Rule 23 concerning the amount of loss either in gross or compared with the losses of others, necessary to qualify as a class representative.

■■■ Defendants point out that by dropping five of its funds subsequent to the designation of the Lead Plaintiff, which it did ostensibly to avoid offering James McCall as a deposition witness, because he left PBHG on less than amicable terms, PBHG stole a march on others with less than $4.3 Million in

losses who may have aspired to serve as Lead Counsel or Class Representative. This may be so; if so it does not rise to such a level of manipulative conduct as to require this Court to realign the Lead Counsel appointments at this time, with all the delay and possibility of increased costs attendant thereon.

▮ PBHG's supposed "proprietary trading methodology," which did not save it from loss, does not detract from the typicality of its claims. All of the usual smoke and mirrors and computer programs to rank stocks, relied on by professionals, have at their foundation an assumption that there is an efficient public market, not adversely distorted by material misrepresentation or omission. Regardless of strategy, methodology employed, and the like, all the claims in this action, including those of investors involved in options trading, arise out of the same common nucleus of fact, rely on the same statutory provisions, invoke loss causation, and are otherwise substantially similar. While there may be discrepancies by and among the claims of the class and those of the proposed class representatives, "mere existence of individualized factual questions with respect to the class representative's claim will not bar certification." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 176 at 180 (2d Cir.1990). No purchaser of securities regardless of trading methodology or strategy would knowingly trade where material information has been misstated or withheld by an issuer. Nor is the proposed Class Representative disqualified because other Pilgrim Baxter funds made a profit in Oxford.

As this Court stated in *In re Baldwin-United Corp. Litig.*, "the test, ultimately, is whether the class representative will promote the interests of the class as he protects his own." 122 F.R.D. at 428. The Court finds that the proposed Class Representatives and based on the present record, Lead Plaintiffs Hurley and Sabbia, present claims and will be subject to defenses typical of the proposed class. The typicality requirement is satisfied.

The other objections to PBHG as a Class Representative have been considered and do not appear to rise to the level of disqualification.

*Adequacy*

▮ The ColPERA and PBHG Funds meet the Adequacy requirement, and Lead Plaintiffs Hurley and Sabbia appear to do so although Defendants have not had the opportunity to test their adequacy. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In essence, the Adequacy requirement extends naturally from the requirements of Commonality and Typicality. As the Supreme Court held in *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982),

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named Plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

at 157–158, n. 13. Therefore, to satisfy the Adequacy requirement, Plaintiffs must demonstrate that the Class Representatives' claims are not in conflict with those of the class, and that counsel for Plaintiffs is qualified and capable in this type of litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992).

ColPERA and PBGH do not have interests adverse to the class as a whole. Furthermore, as Judge McKenna held in *In re Avon Sec. Litig.*, 1998 WL 834366, *9 (S.D.N.Y. 1998), with respect to securities actions such as the current class action, "the qualifications of class counsel are generally more important in determining adequacy than those of class representatives." (citations omitted). Here, there is no question that counsel for Lead Plaintiffs are qualified to try a case of this

nature, and experienced in both class action and general securities litigation.

*Al Tawil as a Class Representative*

Based on the analysis set forth concerning PBHG, this Court finds that Al Tawil also satisfies Rule 23 in all respects.

*Rule 23(b)(3): Common Questions of Law or Fact*

■ Rule 23(b) provides in relevant part: [a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b). This "Predominance" requirement "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997).

In this case, all class members' claims arise from a common nucleus of facts: Defendants' alleged concealment and/or misrepresentations of material facts affecting the market price of the stock of Oxford. Moreover, all plaintiffs' claims rely on common legal theories, specifically violations of federal securities laws. While damages may vary among class members, all share common questions of liability. Damage amounts can be calculated for each individual class member after a determination of liability.

Finally, the Court finds that a class action is superior to other methods available for resolving this case. In *Green*, 406 F.2d 291, our Court of Appeals held, "[if] the security in connection with which the alleged misrepresentations ... have been made is publicly held, a class action may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." at 295–296 (citations omitted).

*Class Size and the Class Period*

■ Defendants request that if the motion is granted the proposed class period be narrowed. Plaintiffs propose a class period of November 6, 1996 to December 9, 1997. Defendants submit that the class period should run from May 15, 1997 (the earliest stock purchase by a proposed Class Representative except for a single purchase by ColPERA) to October 24, 1997 (the last business day before Oxford's disclosure of unanticipated charges and increases in reserves). In support of their position, Defendants claim the existence of two potential conflicts within the class: the "Seller/Purchaser" Conflict and the "Equity" Conflict.

■ The Seller/Purchaser Conflict is said to be "an inherent conflict between individuals who buy stock and individuals who sell stock during the class period." Defendants' Memorandum of Law at 33. Defendants contend that this conflict arises out of sellers' presumed desire to minimize price inflation at the time of the sale, as opposed to the presumed purchaser's desire to maximize price inflation on the date of purchase. In support of the assertion that this conflict defeats class certification, Defendants cite *In re Seagate Tech. II Sec. Litig.*, 843 F.Supp. 1341, 1359–62, 1364–66 (N.D.Cal.1994). Principles of *stare decisis* do not require this Court to give any deference to decisions of another district judge. *See* 28 James Wm. Moore et al.; Moore's Federal Practice § 134.02[1][D] ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") In any event, the holding in *Seagate* has been widely discredited. *See In re Gaming Lottery Sec. Litig.*, 58 F.Supp.2d 62, 69–71 (S.D.N.Y.1999)(Patterson, J.)(describing the holding in *Seagate* as a "minority position" and holding that "[t]he chief role of price inflation remains its function in determining each plaintiff's damages. The common questions [of fact and law] ...bind class members with more force than the varying questions related to price inflation drive them apart."). The argument

based on an assumed Seller/Purchase conflict is rejected.

 Defendants also contend that an "Equity Conflict" arises between class members who still retain their Oxford shares, and those who sold them on learning of the alleged fraud. This is claimed to be so because those class members who still own shares do not want an excessively large verdict, which may injure the economic health of the company. Our Court of Appeals has held expressly that such a conflict does not defeat class certification.

> [W]e do not perceive any conflict of interest between those who have retained their ITT shares and those who have since sold them. The personal interest of those who still hold ITT stock in gaining more from the exchange than they did far outweighs their concern that any award could damage ITT.

*Herbst v. ITT*, 495 F.2d 1308, 1314 (2d Cir. 1974). This argument is also rejected.

 While the duration of the class period should be based on something more than the nonfrivolous allegations set forth in the complaint, this Court need not address the merits of the Plaintiff's individual claim in order to determine the period. *See generally Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.1982), and cases cited. It does not defeat Typicality or Adequacy if it appears that the Class Representative did not purchase the stock at the beginning of the period sought to be litigated, so long as the beginning date of the period has a rational basis. Similarly, as far as concerns the end of the period, this Court agrees that the class period ends when the full truth has been disclosed to the market *and* the natural market forces have had a reasonable period of time to receive, digest and reflect the bad news in the market price of the security.

Although this Court accepts the class period sought, in preference to a shorter class period which would require this Court to adjudicate in advance of trial when the market had responded to a truthful and complete disclosure, the Court notes that any order declaring a class is subject to modification as the litigation goes forward. As a practical matter, the Court also observes that the final judgment to be entered herein would bind only those members of the class who had the opportunity to receive notice and opt out of the litigation. Should the proof at trial limit the period during which damages can be recovered the final judgment will still bind those who are within the definition of class membership adopted by the Court in declaring a class action, but were held not entitled to recover. Were the Court to shorten the class period at this stage of the litigation, persons excluded by a more narrow definition of the class would be free to maintain their own litigation, and the statute of limitations would begin to run as to them.

On balance, the Court finds no useful purpose will be served by rejecting or modifying the proposed class period sought by the Lead Plaintiffs at this time.

*Number of Class Representatives*

In its decision of July 15, 1998, this Court found and concluded that "in the circumstances of this particular case the interests of the proposed class will be best served by a group of three Co–Lead Plaintiffs consisting of (1) ColPERA; (2) the Vogel Group (limited to Mr. Hurley, Mr. Weber and Mr. Sabbia); and (3) PBHG." The Court noted also that, "this structure provides the proposed class with the substantial benefits of joint decision making and joint funding and is consistent with the language of the PSLRA."

 Reading the PSLRA in accordance with its plain meaning, the Court concludes that being a Lead Plaintiff under the PSLRA is not the same as being a Class Representative under Rule 23 F.R.Civ.P., although the statute provides that a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23." Obviously there will be actions brought under the PSLRA by multiple plaintiffs which do not qualify for class action treatment under Rule 23, perhaps for lack of numerosity or for some other reason. Congress is deemed to have understood this and must have intended that the function of lead plaintiff under the PSLRA be different from class representative under Rule 23. There is no requirement found in the plain meaning of the statute that a Lead Plaintiff accept designation of class representative under Rule 23,

and the statute does not provide for any specific action by the Court should it turn out after a Lead Plaintiff has been appointed; that Lead Plaintiff should on further examination fail to meet all of the requirements of Rule 23, or simply withdraw his or her expression of willingness to serve as Class Representative, in order to avoid the risk of a possible adjudication to that effect, or for any reason. There is also no requirement in the statute that all the Lead Plaintiffs qualify, and in the case of the Vogel Group, that Lead Plaintiff was well within its rights in offering only Mr. Weber as a Class Representative from that group.

The structure initially ordered by this Court remains valid, and as was noted, correctly, by Attorney DiBlasi, counsel for defendants Oxford Health Plans, Inc. and others at the hearing held January 19, 2000:

> What our problem is, Your Honor, is that the structure that is being put forward by the Plaintiffs now is subject to attack later on and could deprive all the parties, especially the Defendants whom I represent, of finality.
>
> * * * * * *
>
> [T]here is still going to be three lead plaintiff groups controlling the case. The problem is that one of those groups, the Vogel Group, which now consists of two people, will not be court approved fiduciaries, and that gives rise to the possibility that the deciding vote in an important dispute would be, behind the scenes, cast by a non-Rule 23 fiduciary.

Transcript at p. 23

This Court noted at the time that this "may be a valid point" and now considers that it is indeed a valid point, as appears from the discussion which continues in the subsequent pages of the transcript. Defendants also point out that at case management conference with counsel held on November 29, 1999, the Court engaged in the following colloquy:

> THE COURT: If there is a problem with the typicality or anything else concerning these people, you're not coming back next Tuesday and saying, aha, I'm adding somebody, because the period is closed for discovery.
>
> MR. CHITWOOD (Lead Counsel): We don't believe, Your Honor, that there are any problems with these class representatives.
>
> THE COURT: But the Court has not yet . . .
>
> MR. CHITWOOD: Right; however, traditionally it has been the case that if the Court finds one class representative not to be appropriate for some reason [plaintiffs designate somebody else].
>
> THE COURT: Not the way we're doing it. I had discovery on the class issues. That period of time is closed, and if people want to say I'm out of it, I don't wish to be a class representative, I agree with you they can do that, but they are not coming back next Tuesday.
>
> * * * * * *
>
> MR. CHITWOOD: Our point here, Your Honor, is that the defendants have embarked on the campaign with regard to these proposed class representatives to essentially make them defendants in this litigation.
>
> THE COURT: That's a red herring, as far as I'm concerned. You have to persuade the Court that they satisfy all of the requirements of Rule 23. Some of that we went into early in the case, and some of that was impliedly tendered to the Second Circuit in the interlocutory appeal. They are entitled to reasonable discovery on that issue. That issue is a threshold issue that will be resolved. We started off with all of these lead plaintiffs, which this court thought were going to be [class] representatives. The class representative is going to control the case. He is the Rule 23 fiduciary, not the lead plaintiffs. That's the problem created by this new hybrid statute.
>
> * * * * * *

■ The Court's comment must be construed as more exhortatory than adjudicative. Concerned, perhaps unduly, by the perceived slow pace of class discovery, and anxious to proceed with the merits, the Court apparently foresaw that what did happen might happen. A Court may anticipate problems in the future but should not appear to give advance rulings on those problems. The colloquy, which was never intended as a ruling, is withdrawn.

This Court finds and concludes under the circumstances of this case, that in order to provide adequate protection to the members of the Plaintiff Class and subclasses, a third Class Representative should be permitted to qualify, preferably from the Vogel Group. Within ten (10) days, Mr. Hurley and Mr. Sabbia, or either of them may serve written notice of their willingness so to act.

Defendants thereafter will be entitled, and indeed required, to discharge their obligation of due diligence to ascertain whether Hurley and Sabbia, or either of them, do in fact meet the qualifications for a Class Representative discussed above and as provided by Rule 23. Accordingly, class discovery is reopened for that limited purpose. Due diligence may or may not require deposition testimony on the part of such proposed Class Representatives. If Defendants conclude that deposition testimony or other discovery is required this shall be concluded within thirty (30) days from the filing of the written consent to serve, unless enlarged by the Court, and if depositions are required they should be conducted promptly and limited to matters relevant to qualification as a Rule 23 Class Representative. The Court finds it unnecessary in light of the prior high level of cooperation among counsel, to limit the length of any depositions, or to require that a judicial officer preside, but is prepared to do so should circumstances develop which would make such micro-managing necessary in order to avoid undue expense and delay.

*Motion of North River Trading Co., LLC*

■ At the January 19, 2000 hearing, Attorney Arthur N. Abbey, representing North River, entered the discussion beginning at page 40 of the transcript, and offered to renew his client's prior motion to become Lead Plaintiff, suggesting that, "I think there is a real issue, ... it's an issue that's going to be lurking in the case if you have people who are Lead Plaintiffs who aren't Class Representatives. I think there's a big hole, and somebody's going to drive a truck through that hole, and I think the way to cure it is to make sure that each Lead Plaintiff, or if there is a Lead Plaintiff group, that they also be Class Representatives. What's the use of having an issue lurking in the case and finding that it's a problem." He argued that there is no authority that a person can be a Lead Plaintiff and direct a case, while not accepting the fiduciary responsibility under Rule 23 of a Class Representative, suggesting that there was "something totally illogical about that."

Of course, many things in the law are illogical, especially where a "reform" statute is concerned.[1] Before the discussion concluded, Attorney Abbey offered his client as a Class Representative under Rule 23 (only), and suggested that he and his client would cooperate fully with the Lead Plaintiffs and their attorneys from hence forward. (Transcript at 44).

Thereafter, by letter filed with the Court on January 18, 2000, Attorney Abbey expanded the offer of North River, to serve both as Lead Plaintiff and Class Representative, advising that, "Furthermore, North River does not seek to replace any of the previously designated Lead Counsel." North River's position on this point changed further, because the motion which it filed on February 3, 2000 specifically requested that counsel selected by North River be approved as Lead Counsel.

The Court appreciates the willingness of North River to accept the responsibility of a Lead Plaintiff or Class Representative at this time and stage of the litigation. The Court believes on reflection that it probably has the power to designate a Class Representative

---

1. We are reminded that "When Dr. Johnson defined patriotism as the last refuge of a scoundrel he was unconscious of the then undeveloped capabilities of the word Reform." Senator Roscoe Conkling of New York (1829–1888) as quoted by Senator Daniel Patrick Moynihan.

under Rule 23 who is not a Lead Plaintiff, simply because there is nothing in the statute which prevents it. At the same time, the court recognizes that to do so would be somewhat anomalous from a structural point of view, and that the substitution of a new Lead Plaintiff at this stage of the litigation is likely to cause dislocation and delay. Designating another law firm as Lead Counsel either in addition to the existing Lead Counsel or in substitution of any of them, would seem to promise more delay and unjustifiable additional expense, which on the present record appears, unwarranted.

For the reasons noted, designating North River at this time would seem to be an unduly drastic remedy, in light of the express willingness of Messrs. Hurley and Sabbia to seek to qualify. Should they fail to qualify, the motion of North River Trading Company may be renewed on the same or additional papers. For the present, for the reasons noted above, the motion is denied as a matter of discretion.

## CONCLUSION

The Court grants the motion to declare a class action as set forth herein. An order to that effect may be settled on notice or waiver of notice after Messrs. Hurley and Sabbia have had the opportunity to consider and advise in writing whether they wish to serve as Class Representatives under Rule 23, and after the Defendants have had an opportunity to discharge their obligation of due diligence as to the adequacy of either or both of such Class Representatives. Upon being advised that there are no objections or problems with these designees, the Court will sign a class order. The order shall also specify, consistently with the practice in this District, provisions as to class notification, and an opportunity for members of the class to opt out of this litigation if they wish to do so. Any objections to the appointment of Mr. Hurley or Mr. Sabbia shall be served and filed prior to April 27, 2000, unless extended by the Court.

SO ORDERED.