## In re INITIAL PUBLIC OFFERING SECURITIES LITIGATION.

### No. 21 MC 92(SAS).

United States District Court,
S.D. New York.

Dec. 27, 2002.

---

Melvyn I. Weiss, Robert Wallner, Ariana J. Tadler, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Stanley Bernstein, Robert Berg, Bernstein, Liebhard & Lifshitz, LLP, New York City, for Plaintiffs.

Gandolfo V. DiBlasi, Penny Shane, Sullivan & Cromwell, New York City, for Defendants (Underwriters).

Jack C. Auspitz, Matthew M. D'Amore, Morrison & Foerster, LLP, New York City, for Defendants (Issuers).

### *AMENDED OPINION AND ORDER*

SCHEINDLIN, District Judge.

In a series of applications filed with the Court on November 8, 2002, plaintiffs in cer- tain of the cases consolidated as *In re IPO Securities Litigation,* 21 MC 92, requested permission to substitute new "lead plaintiffs," as that term is defined in the Private Securi- ties Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(a).[1] In addition, plaintiffs seek leave to amend the complaints of thirty- three of the consolidated cases for the pur- pose of joining new named plaintiffs and leave to amend all complaints to correct cer- tain "errata." *See* 11/19/02 Letter from Mel- vyn I. Weiss to the Court. On December 6, 2002, I granted the applications in an oral decision. I write now to fully set forth the reasoning supporting that decision. For the reasons set forth below, plaintiffs' motions are granted in their entirety.[2]

### I. LEGAL STANDARD

Whether to permit a plaintiff to amend her pleadings is a matter within the Court's "sound discretion." *Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F.2d 672, 680 (2d Cir.1985). *See also* Fed.R.Civ.P. 15(a). That discretion encompasses both whether to permit substantive amendments of plaintiffs' claims and allegations, as well as whether to permit the joinder of additional plaintiffs. *See Mackensworth v. S.S. Ameri- can Merchant,* 28 F.3d 246, 251 (2d Cir.1994) (holding that district court properly treated plaintiff's "Notice of Joinder" as a motion for leave to amend under Fed.R.Civ.P. 15); *Aqu- ilio v. Manaker,* Nos. 90–CV–45, 91–CV–93, 1991 WL 207473, at *16 (N.D.N.Y. Oct.10, 1991) (treating motion to join new plaintiffs as motion for leave to amend). *See also* Fed.R.Civ.P. 21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.").

When deciding such a motion, "[l]eave to amend shall be freely given.... Parties are generally allowed to amend their plead- ings absent bad faith or prejudice." *Com-*

---

1. In particular, plaintiffs move for the substitu- tion of lead plaintiffs in *In re Quest Software, Inc. Sec. Litig.,* 01 Civ. 10745; *In re TeleCommunica- tions Systems, Inc. Sec. Litig.,* 01 Civ. 9500; and *In re Z–Tel Technologies, Inc. Sec. Litig.,* 01 Civ. 5074. *See* 12/5/02 Letter from Christian P. Sie- bott to the Court.

2. To the extent that plaintiffs may not have for- mally sought leave to amend, the Court deems plaintiffs' letter of September 20, 2002, as mak- ing such an application. *See* 9/20/02 Letter from Robert A. Wallner to the Court.

*mander Oil Corp. v. Barlo Equipment Corp.,* 215 F.3d 321, 333 (2d Cir.2000) (citations omitted). In the leading case, the Supreme Court has explained that a plaintiff "ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.*

## II. SUBSTITUTION OF LEAD PLAINTIFFS

Although a District Court is free to grant leave to amend as a matter of discretion, the PSLRA provides specific requirements that must be met in order for a plaintiff to be appointed "lead plaintiff." Thus, while I have discretion to decide *whether* to permit plaintiffs to amend their complaints, the PSLRA governs the appointment of lead plaintiffs.

Under the PSLRA, the "most adequate," or lead, plaintiff is presumptively the plaintiff who: (1) filed an initial complaint or timely moved for appointment as lead plaintiff;[3] (2) has the largest financial interest in the case; and (3) otherwise satisfies the requirements of Rule 23, describing the requirements for class actions generally. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa)–(cc).

The PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff when the previously certified one withdraws. It only stands to reason that the appropriate lead plaintiff would be the next "most adequate" plaintiff in accordance with the above criteria; the proper application of that criteria, however, is somewhat affected by the fact that these movants seek to replace already certified lead plaintiffs. Thus it is instructive—especially because the question may arise again—to briefly review the standard that the Court will apply in deciding a motion for appointment of substitute lead plaintiffs.

■■■ *First,* the PSLRA requires that the movant file a complaint[4] or timely move for appointment as lead plaintiff. Because these actions were all initially filed between one, *see Genduso v. Internap Network Servs. Corp.,* 01 Civ. 11247 (filed December 6, 2001), and two years ago, *see Makaron v. VA Linux Sys., Inc.,* 01 Civ. 242 (filed January 11, 2001), none of these applicants filed within 60 days of the initial notice of pendency. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). In the absence of any guidance in the PSLRA, I will deem any movant timely who either (a) filed a complaint in these consolidated actions, as explicitly contemplated by the PSLRA, 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa), (b) moved to be appointed lead plaintiff in response to the initial notice of pendency, *id.,* or (c) moved to be appointed lead plaintiff within 60 days of the withdrawal of the previous lead plaintiff.[5]

---

3. The plaintiff filing the initial complaint must publish a notice in a "widely circulated national business publication" notifying potential class members (a) of the pendency of the action, and (b) that they have 60 days to move for appointment as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(A)(i).

4. To be precise, the PSLRA requires that the movant file "the" complaint. However, where numerous complaints have been consolidated, the filing of any of the initially consolidated actions will suffice for purposes of the lead plaintiff section because the PSLRA specifically instructs courts to rule on consolidation prior to approving a lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii).

5. A colorable argument can be made that, when the initial lead plaintiff withdrew, a new notice should have been filed and the entire lead plaintiff process re-opened. However, where a new lead plaintiff is willing to step forward, there is no need to start the process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of the statutorily required published notice, *supra* note 3. If other plaintiffs had filed a lawsuit or originally moved to be appointed lead plaintiff—*i.e.,* moved for appointment as lead plaintiff in response to the initial notice of pendency—then those plaintiffs would arguably be entitled to priority over any other potential lead plaintiffs. But that is not the case here.

■ *Second,* the PSLRA requires that the lead plaintiff have the largest financial interest in the relief sought. In determining who has the largest financial interest, a court considers four factors: (i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss. *See In re Crayfish Co. Sec. Litig.,* No. 00 Civ. 6766, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002) (*citing In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 296 (E.D.N.Y.1998)).

■ *Third,* and finally, the PSLRA requires that the lead plaintiff otherwise meets the requirements of Rule 23. The Rule 23 analysis for purposes of appointing a lead plaintiff is significantly less detailed than that Rule otherwise requires. "At this stage in the litigation, one need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." *In re Crayfish,* 2002 WL 1268013, at *4.

Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise.... The adequacy requirement is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient

interest in the outcome of the case to ensure vigorous advocacy.

*Id.* at *5.

■ Moreover, it is worth noting that each of these three "adequacy" requirements must be read in conjunction with the other two. That is, because the lead plaintiff must meet all three elements of 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), those elements must be read as successive restrictions. Thus, for example, the most adequate plaintiff is not necessarily the class member with the largest financial interest in the action, but rather the class member with the largest financial interest in the action who is willing to prosecute the claims (*i.e.,* who has timely moved for appointment as lead plaintiff or filed a complaint) and who otherwise meets the requirements of Rule 23. If it were any other way, there would not be a viable lead plaintiff in many cases, *e.g.,* if the putative class member with the largest financial interest were not willing to prosecute the claim, or if there was a unique defense available to rebut her claims.

■ Each of the proposed substitute lead plaintiffs in the three cases at issue here— *Quest Software, Telecommunications Systems,* and *Z–Tel Technologies*—meets these requirements. Furthermore, I am not aware of any other members of the proposed classes in any of these cases that have sought to serve as lead plaintiff, either now or in the past.[6] Notably, defendants have *never*

---

6. In *Quest Software,* K. Peter Koch seeks to be certified as lead plaintiff. Mr. Koch filed an initial complaint in this action, *Koch v. Quest Software, Inc.,* 01 Civ. 10745, and timely moved for appointment as lead plaintiff after the original lead plaintiff, Ray D. Campbell, withdrew. Furthermore, no other putative class member ever filed a lawsuit or moved for appointment as lead plaintiff. Mr. Koch lost over $15,000 in connection with the fraud alleged here, and otherwise satisfies the requirements of Rule 23 as described above. In addition, Mr. Koch has submitted the certification required by the PSLRA, 15 U.S.C. § 78u–4(a)(2)(A). *See* Attachment 1 to 12/5/02 Letter from Christian P. Siebott to the Court.

In *Telecommunications Systems,* the proposed lead plaintiff, David J. Bertoli, is a named plaintiff in the *Telecommunications Systems, Inc.* amended complaint, and timely moved for appointment as lead plaintiff after the original lead plaintiff, Max Highstein, withdrew. Furthermore, no other putative class member ever filed

a lawsuit or moved for appointment as lead plaintiff. Mr. Bertoli lost over $1,800 in connection with the fraud alleged herein, and otherwise satisfies the requirements of Rule 23. In addition, Mr. Bertoli has submitted the certification required by the PSLRA, 15 U.S.C. § 78u–4(a)(2)(A). *See* Attachment 2 to 12/5/02 Letter from Christian P. Siebott to the Court.

In *Z–Tel Technologies,* the proposed lead plaintiff, David Grosinger, filed an initial complaint, *Grosinger v. Z–Tel Technologies, Inc.,* 01 Civ. 5074, and timely moved for appointment as lead plaintiff after the initial lead plaintiff, Westwood Management Corp., withdrew. Furthermore, no other putative class member ever filed a lawsuit or moved for appointment as lead plaintiff. Mr. Grosinger lost almost $500 in connection with the fraud alleged here, and otherwise satisfies the requirements of Rule 23. In addition, Mr. Grosinger has submitted the certification required by the PSLRA, 15 U.S.C. § 78u–4(a)(2)(A). *See* Attachment 3 to 12/5/02 Letter from Christian P. Siebott to the Court.

lodged any objections to the "adequacy" of the proposed substitute lead plaintiffs, nor is it even clear whether defendants would be entitled to do so. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (specifying that the court shall presume the most adequate plaintiff to be the one who meets the three criteria noted above, subject to rebuttal "by a member of the purported plaintiff class"). I therefore find that Messrs. Koch, Bertoli, and Grosinger are the "most adequate" plaintiffs to serve as lead plaintiffs in these cases.

I have considered defendants' other arguments and find them to be without merit. I therefore grant the applications.

## III. JOINDER OF ADDITIONAL "NAMED PLAINTIFFS"

■ Plaintiffs also seek leave to join new named plaintiffs in 33 cases, pursuant to Federal Rules of Civil Procedure 15 and 20.[7] Defendants argue that such a motion is untimely in the sense that it runs afoul of several pronouncements of the Court setting a deadline for amending complaints. However, there was never a court-ordered cut-off. Rather, the informal deadline was to finalize the *substance* of the pleadings and permit the motions to dismiss to proceed. *See* 3/11/02 Tr. at 20. The joinder of the proposed additional named plaintiffs does not affect the material allegations of the complaints, and in any case, defendants had notice of plaintiffs' intention to join additional' named plaintiffs well in advance of the filing of their motions to dismiss. Plaintiffs informed the Court and defendants at conferences on June 20, 2002, *see* 6/20/02 Tr. at 81, and July 9, 2002, *see* 7/9/02 Tr. at 23–25, that they intended to join new plaintiffs to cure certain alleged pleading deficiencies. Although defendants certainly reserved their right to object to the joinder at that time, *see* 7/9/02 Tr. at 30; 8/14/02 Letter from Penny

Shane to the Court, they were unquestionably put on notice of plaintiffs' intentions. In light of that fact, defendants have not shown that they were prejudiced by any delay in joining these plaintiffs. *See also* Fed. R.Civ.P. 21 ("Parties may be ... added by order of the court ... at *any stage* of the action") (emphasis added).

Defendants do raise one novel argument. In their request for leave to amend, plaintiffs assert that for the joinder of named plaintiffs, "the lead plaintiff process set forth in the PSLRA is not implicated." *See* 9/20/02 Letter from Robert A. Wallner to the Court. Defendants argue, however, that the joinder of plaintiffs who are not PSLRA lead plaintiffs would not save the allegedly deficient claims (and would thus be futile) because, "[u]nder the PSLRA, the lead plaintiffs must themselves have a claim; they cannot bring that claim on behalf of others who might have such a claim." *See* 9/30/02 Letter from Penny Shane to the Court.

■ After reviewing the parties' supplemental letters on this question, I conclude that in order for a claim to be asserted on behalf of a putative class, only the named plaintiffs—but not necessarily the lead plaintiff—must have standing.

Courts in this circuit have repeatedly held that,

> In order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the *named* plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.

*Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677, 2000 WL 1886605, at *1 (S.D.N.Y.

---

7. Plaintiffs seek to join new named plaintiffs in the cases related to the following issuers:

Autoweb.com; Breakaway Solutions, Inc.; Clarent Corp.; Cosine Communications, Inc.; Drkoop.com, Inc.; Eloquent, Inc.; Foundry Networks, Inc.; Interwoven, Inc.; Liberate Technologies, Inc.; McAfee.com Corp.; Netratings, Inc.; Netro Corp.; Nuance Communications, Inc.; ONI Systems, Corp.; Onyx Software Corp.; Orapharma, Inc.; Pacific Internet Ltd.; Packe-

teer, Inc.; Portal Software, Inc.; PSI Technologies Holdings, Inc.; PurchasPro.Com, Inc.; Rhythms Netconnections, Inc.; Starmedia Netware, Inc.; Storage Networks, Inc.; Sycamore Networks, Inc.; Terra Networks, S.A.; Transmeta Corp.; Tut Systems, Inc.; United Pan–Europe Communications, N.V.; UTStarcom, Inc.; Webmethods, Inc.; Xpedior, Inc.; Z–Tel Technologies, Inc.

Dec.28, 2000) (emphasis added). Thus, the operative question is whether the concept of a "named plaintiff" survives in securities class actions distinct from the PSLRA-defined "lead plaintiff." It does.

█ The purpose of the lead plaintiff section of the PSLRA was never to do away with the notion of class representatives or named plaintiffs in securities class actions. Rather, the purpose was to ensure that securities litigation was investor-driven, as opposed to lawyer-driven. *See* S.Rep. No. 104–98 at 4 (1995), U.S.Code Cong. & Admin.News 1995, at 679, 683 (finding that the purpose of the PSLRA is "to empower investors so that they—not their lawyers—exercise primary control over private securities litigation"). Indeed, the lead plaintiff provision "is intended to permit the plaintiff to choose counsel rather than having counsel choose the plaintiff." *Id.* at 11, U.S.Code Cong. & Admin.News 1995, at 679, 690. *See also* H.R. No. 104–369 at 32–35 (1995), U.S.Code Cong. & Admin.News 1995, at 730, 731–34. *See generally In re Cendant Corp.*, 260 F.3d 183, 196–97 (3d Cir.2001) (surveying the legislative history of the PSLRA). Accordingly, the only responsibility explicitly given to lead plaintiffs by the PSLRA is the power to select and direct class counsel. *See* 15 U.S.C. § 78u–4(a)(3)(B)(v). Nowhere is it suggested that the concept of "lead plaintiff" was intended to be coterminous with "named plaintiffs" or "class representatives."

Moreover, the fact that the lead plaintiff is to be selected in accordance with objective criteria that have nothing to do with the nature of the claims (as described above) strongly suggests the need for named plaintiffs in addition to any lead plaintiff. Courts are constrained to choose a lead plaintiff who has, among other things, the largest financial stake in the outcome of the case. It stands to reason that in many cases, the instant cases included, the plaintiff with the largest financial interest may not have standing to sue on all causes of action. There is nothing to suggest that, in those cases, Congress intended that plaintiffs must file an entirely separate class action lawsuit when, in any other context, a subclass would suffice. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D.Tex.2002) (refusing to certify subclass representatives as lead plaintiffs).

The only other possibility—that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action—has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA. *See In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 308 (S.D.N.Y.2001) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.") (*quoting In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y.1997)). *See also In re Crayfish*, 2002 WL 1268013, at *5 (citing numerous cases in which groups of lead plaintiffs have been rejected).

█ Rather, "[r]eading the PSLRA in accordance with its plain meaning, the Court concludes that being a Lead Plaintiff under the PSLRA is not the same as being a Class Representative under Rule 23 F.R.Civ.P., although the statute provides that a Lead Plaintiff must 'otherwise satisfy the requirements of Rule 23.'" *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 378 (S.D.N.Y.2000). As Judge Brieant explained, "[t]he Court believes on reflection that it probably has the power to designate a Class Representative under Rule 23 who is not a Lead Plaintiff, simply because there is nothing in the statute which prevents it." *Id.* at 380–81. I agree.[8] Accordingly, plaintiffs are entitled to join new named plaintiffs.[9]

---

8. Of course, these cases have not yet reached the class certification stage so the designation of any class representatives is premature. But the notion that a District Court can appoint a class representative who is not a lead plaintiff presupposed the existence of named plaintiffs who are not lead plaintiffs.

9. Defendants also raise the related argument that joinder would be futile because the claims of the newly joined plaintiffs would be time-barred, relying on *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), which held that the tolling rule announced by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) did not apply "to permit the filing by putative class members of a subsequent *class* action nearly identical in scope to the original class action which was denied certification." 827 F.2d at 876 (emphasis

## IV. OTHER AMENDMENTS AND ERRATA

 Finally, plaintiffs seek to amend the complaint in order to correct certain "errata," which defendants argue amount to substantive amendments. *Compare* 9/13/02 Letter from Gregory A. Markel to the Court (accusing plaintiffs of "abus[ing] the privilege of making minor informal corrections to·the pleadings by repeatedly making substantive changes in their complaints") *with* 9/20/02 Letter of Robert A. Wallner to the Court (referring to those same changes as "ministerial, conforming or corrective amendments").

Here, defendants have not alleged any prejudice other than that the complaints needed to be in some state of finality in order for defendants to adequately prepare their motions to dismiss. Again, plaintiffs put defendants on notice of the substance of their amendments long before defendants' motions to dismiss were filed. *See* 6/20/02 Tr. at 15; 7/9/02 Tr. at 23–27. Indeed, certain of the amendments were directly responsive to requests from the Court. *See* 6/20/02 Tr. at 40–41. Regardless of whether the proposed changes are deemed "errata" or "amendments,"—and it appears that most if not all are errata [10]—the policy of freely granting leave to amend controls absent a showing of prejudice or bad faith by defendants. That is, because plaintiffs have not shown prejudice or any other reason to deny leave to

- Plaintiffs' Addendum to Master Allegations (filed July 10, 2002) and Addendum B to Master Allegations (filed July 12, 2002) are responsive to the Court's request that plaintiffs clarify allegations of tie-in or undisclosed compensation arrangements with respect to thirty of the consolidated actions. *See* 7/10/02 Letter from Peter Safirstein to the Court; 7/12/02 Letter from Peter Safirstein to the Court.
- Plaintiffs' "Errata to Consolidated Amended Class Action Complaint for Violations of the Securities Law" were filed in nine cases where plaintiffs inadvertently failed to include so-called "zero-allocation" claims. *See* 7/22/02 Letter from Penny Shane to the Court (listing the nine cases); 7/30/02 Letter from Melvyn I. Weiss to the Court (listing 34 other cases where plaintiffs had previously made "zero-allocation" allegations and explaining that plaintiffs simply forgot to include such allegations in the other nine cases).

These "amendments" are all plainly matters of housekeeping, rather than substantive changes. Moreover, to the extent that defendants claim that the errata relating to the "zero-allocation" claims are substantive, there is no prejudice to them both because they were on notice of this claim, and because such allegations would not affect the currently pending motions to dismiss or the defendants' briefing of those motions. *See* 7/15/02 Letter from Jack Auspitz to the Court ("Because the [zero-allocation allegations] are confined to a limited number of Issuer Defendants, they are not addressed in this Memorandum of Law [in Support of the Issuer Defendants' Motion to Dismiss]."). *But see* Reply Memorandum in Further Support of the Underwriter Defendants' Motion to Dismiss Market Manipulation and Other Claims Based on Tie–In Allegations at 7 n. 5 (arguing that the conduct alleged in plaintiffs' "zero-allocation" claims is legal).

---

in original). Even supposing that absent the toll of *American Pipe* plaintiffs' claims would be time-barred, *Korwek* is inapposite here. As plaintiffs correctly note, *Korwek's* holding is limited to cases in which class certification is denied and plaintiffs file a subsequent class action lawsuit in order to relitigate class certification. *See* 9/20/02 Letter from Robert A. Wallner to the Court. *See also Phillips v. Kidder, Peabody & Co.*, 933 F.Supp. 303, 311 (S.D.N.Y.1996), *aff'd*, 108 F.3d 1370, 1997 WL 138814 (2d Cir.1997). Defendants' subsequent reliance on *Dietrich v.·Bauer*, 76 F.Supp.2d 312 (S.D.N.Y.1999), is similarly misplaced. In *Dietrich*, Judge Sweet refused to certify new class representatives before the plaintiff class had been certified; to do otherwise, he explained, would be "premature and without procedural foundation." *Id.* at 326. Judge Sweet's reasoning in so holding is in perfect accord with my holding here. In *Dietrich*, he explained that "Dietrich cannot salvage his Section 12 claims by contending that the proposed new representatives have standing to prosecute when they are not named as plaintiffs and when, as discussed below, he himself lacks standing to prosecute those claims." *Id. Dietrich*, therefore, seems to explicitly contemplate the importance of named plaintiffs above and beyond the lead plaintiff (Dietrich): at the class certification stage, only lead and named plaintiffs would be eligible for appointment as class representatives.

10. Plaintiffs' errata is introduced in a number of submissions, each of which makes only minor ministerial changes:
 - Plaintiffs' "Errata to Master Allegations" (filed June 18, 2002) is comprised of errata in the truest sense of the word. These changes correct spelling errors, add or delete stray words, and otherwise correct inadvertencies, *e.g.*, replacing "Lehman" with "Lehman Brothers" throughout. *See* Affidavit of Peter G.A. Safirstein in Support of Plaintiffs' Motion for Leave to Correct Errata (filed June 18, 2002).

amend, leave to amend would be granted here even if the changes were "substantive."

■ I have considered defendants' other arguments and find them to be without merit.[11] Accordingly, leave to amend is granted.

## V. CONCLUSION

For the reasons set forth herein, plaintiffs' motions for leave to amend is granted for the purpose of substitution of lead plaintiffs in the cases relating to issuers Quest Software, Inc., Telecommunications Systems, Inc., and Z–Tel Technologies, Inc. Leave is also granted for the purpose of joining new named plaintiffs in the 33 cases set forth at note 7, *supra*, and for the amendment of certain "errata" as set forth, *inter alia*, in the Affidavit of Peter G.A. Safirstein in Support of Plaintiffs' Motion for Leave to Correct Errata, Addendum to Master Allegations, Addendum B to Master Allegations, and "Errata to Consolidated Amended Class Action Complaint for Violations of the Securities Law" in the cases related to the following issuers: Avenue A, Inc.; Caliper Technologies, Inc.; Chinadotcom Corp.; Digital River, Inc.; Gadzoox Networks, Inc.; Next Level Communications, Inc.; Redback Networks, Inc.; Vicinity Corp.; and Wireless Facilities, Inc.

11. Defendants argue at length that certain of these amendments are "futile" and should not be allowed, see 9/13/02 Letter from Penny Shane to the Court at 3–5, primarily on the theory that the conduct alleged is not illegal. While amendments may certainly be disallowed for futility, *see Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir.2002), they need not be. Futility merely provides one "appropriate basis for denying leave to amend." *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir.2001). *See also Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("in determining whether leave to amend should be granted, the district court has *discretion to consider* ... the apparent 'futility of amendment,'") (emphasis added). Where, as here, the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent. That rule is especially true here, where the parties have already fully briefed this issue in their motion to dismiss.