SANKET J. BULSARA, United States Magistrate Judge
This is a putative class action brought on behalf of investors who purchased publicly traded securities of Foot Locker, Inc. ("Foot Locker") from August 19, 2016 to August 17, 2017. Plaintiff City of Warren Police and Fire Retirement System ("City of Warren") has brought claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5 against Foot Locker, Richard A. Johnson ("Johnson"), Foot Locker's President, Chief Executive Officer and Chairman of the Board of Directors, and Lauren B. Peters ("Peters"), Foot Locker's Chief Financial Officer. (Dkt. No. 1, Compl. ¶¶ 2, 6-8). Foot Locker is an athletic shoe and apparel retailer and is traded on the New York Stock Exchange under the ticker symbol "FL."
Pending before the Court is New England Carpenters Guaranteed Annuity and Pension Funds' (the "Funds") unopposed motion for appointment as Lead Plaintiff. Four other motions for appointment as Lead Plaintiff and corresponding motions for appointment as Lead Class Counsel were filed. Three were withdrawn. (See Dkt. No. 30 (withdrawing Dkt. No. 20, Brian Rosenberg's ("Rosenberg") motion); Dkt. No. 31 (withdrawing Dkt. No. 14, Osman Kazan's ("Kazan") motion); Dkt. No. 33 (withdrawing Dkt. No. 17, Boilermaker-Blacksmith National Pension Trust's ("Boilermaker") motion) ). Integral Capital Management SARL's ("Integral Capital") motion, (Dkt. No. 23), was not *313 withdrawn, but the movant indicated that it did not oppose the Funds' motion, (Dkt. No. 32). City of Warren did not file a motion.
For the reasons stated below, the Funds' motion for appointment as Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel for the putative Class are granted.
Background
City of Warren filed its Complaint on March 9, 2018. The Complaint alleges that on August 19, 2016, November 18, 2016, and February 24, 2017, Foot Locker issued press releases announcing its second, third, and fourth quarter 2016 financial results. (Compl. ¶¶ 12, 14, 16). On those same days, Foot Locker conducted conference calls with analysts and investors to discuss the company's earnings and operations. (Id. ¶¶ 13, 15, 17). Defendants are alleged to have made positive statements about Foot Locker's business metrics and financial prospects that were materially false and misleading in those press releases and during the conference calls. (Id. ¶¶ 12-17). Defendants are also alleged to have failed to disclose adverse facts-namely, that Foot Locker's vendors were transitioning to online retailers and increased competition with online retailers affected pricing and lowered demand such that statements about Foot Locker's business were materially false and misleading or lacked a reasonable basis. (Id. ¶ 18).
On May 19, 2017, Foot Locker issued a press release announcing its first quarter 2017 financial results. (Id. ¶ 19). Foot Locker reported that revenue growth had declined and were essentially flat; same store sales increased only one-half of one percent, and profits fell to $1.36 per share, below the $1.38 per share Foot Locker led investors to expect and below the $1.39 per share reported during the same period in 2016. (Id. ). During the conference call held with investors and analysts that morning, Defendants further disclosed that this trend was not limited to the second half of 2016 and the first quarter of 2017 but would continue. (Id. ). Defendants stated that if sales did not improve, the company would be forced to cut costs and inventory in order to make its 2017 financial guidance of a mid-single digit earnings per share increase. (Id. ). In response, the price of Foot Locker common stock declined from its open of $70.45 per share on May 19, 2017 to a close of $58.72 per share. (Id. at 20).
On August 18, 2017, Foot Locker issued a press release announcing its second quarter 2017 financial results. (Id. at 21). Foot Locker reported that its revenues had declined 4.4%, from $1.78 billion in 2016 to $1.7 billion in 2017 during the same quarter. (Id. ). Foot Locker reported that its profits fell during the period to $0.39 per share, below the $0.90 per share the company had led investors to expect, and the $0.94 per share reported in the same quarter in 2016. (Id. ). The company also stated that it would close approximately 130 stores, more than the 100 stores it had previously announced it would close. (Id. ). During the conference call, Foot Locker said it expected weaker sales for the remainder of 2017, with same store sales likely to be down between 3% and 4%. (Id. ). The price of Foot Locker common stock declined from a close of $47.70 per share on August 17, 2017 to a close of $34.38 per share on August 18, 2017. (Id. at 22).
The Complaint contains two causes of action alleging: (1) a violation of Section 10(b) of the Exchange Act and Rule 10b-5, (Compl. ¶¶ 34-37); and (2) a violation of Section 20(a) of the Exchange Act, (id. ¶¶ 38-39).
*314 Five motions, each of which asked the Court to appoint the movant(s) as Lead Plaintiff, and designate Lead Class Counsel, were filed on May 8, 2018. Three of those motions have been withdrawn and Integral Capital has filed a notice of non-opposition, leaving the Funds' motion unopposed.
Discussion
The Private Securities Litigation Reform Act ("PSLRA") requires that a plaintiff who files a complaint publish, in a widely circulated business oriented publication or wire service, a notice advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period"; and permits "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]" 15 U.S.C. § 78u-4(a)(3)(A).
On March 9, 2018, Robbins Geller, counsel for City of Warren and the Funds, caused a notice about the pendency of the action to be published in Business Wire . (See Declaration of David A. Rosenfeld in Support of the New England Carpenters Funds' Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Rosenfeld Decl."), Ex. A). Business Wire "is a suitable vehicle for meeting the statutory requirement that notice be published." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co. , 229 F.R.D. 395, 403 (S.D.N.Y. 2004). None of the moving parties challenged the adequacy of the notice.
The 60-day period in which any member of the proposed class may apply for lead plaintiff status elapsed on May 8, 2018; the Funds' motion, which was filed on May 8, 2018, was timely. Integral Capital's motion-the only other motion not withdrawn-was filed on May 8, 2018 and was also timely. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).
I. Lead Plaintiff
The PSLRA requires the Court to appoint as "lead plaintiff" the member of the class that the Court determines to be "most adequate plaintiff," i.e . the member the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Court must "adopt a presumption that the most adequate plaintiff" "is the person or group of persons" that:
(1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s);
(2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and
(3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted "only" by proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).
Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff. See Springer v. Code Rebel Corp. , No. 16-CV-3492, 2017 WL 838197, at *1 (S.D.N.Y. Mar. 2, 2017) ("Although the ... motion is unopposed, the Court must still ensure that it is the most adequate plaintiff under the PSLRA."); e.g., In re Symbol Techs., Inc. Sec. Litig. , No. 05-CV-3923, 2006 WL 1120619, at *2 (E.D.N.Y. Apr. 26, 2006).
The Funds did not file the Complaint, but made a timely motion to be appointed *315 lead plaintiff. The Court therefore turns to the two remaining elements of the presumption.
A. Largest Financial Interest
In assessing the financial interests of parties competing for lead plaintiff status, the Court will generally consider "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." In re Gentiva Sec. Litig. , 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (referring to factors as the " Olsten Factors," citing In re Olsten Corp. Sec. Litig. , 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998) ). The fourth factor, the approximate losses suffered, is considered to be the most important. See Baughman v. Pall Corp. , 250 F.R.D. 121, 125 (E.D.N.Y. 2008) ; see also Khunt v. Alibaba Grp. Holding Ltd. , 102 F.Supp.3d 523, 530 (S.D.N.Y. 2015).
Under these criteria, the Funds have the largest demonstrated financial interest. During the class period, they are alleged to have suffered $2,034,806.60 in losses, having purchased 102,327 shares total, 36,188 net shares, and expending a net amount of $3,238,868.26 on Foot Locker common stock during the class period.[1] (Rosenfeld Decl., Ex. C).
The financial interest of Integral Capital, the only other party not to withdraw its application, does not compare to that of the Funds. Integral Capital suffered, in contrast to the Funds, $227,902.91 in losses, based on a purchase of 7,229 shares, 7,229 net shares (Integral Capital has since sold all of its shares outside of the class period), and expending a net amount of $470,475.51. (Dkt. No. 25, Declaration of Kim E. Miller in Support of the Motion of Integral Capital Management SARL for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Miller Decl."), Ex. B).
Had the other parties pressed their motions to be Lead Counsel, the Funds' financial interest would still be greater. Kazan suffered $15,796.32 in losses, based upon a purchase of 1,022 shares total, 822 net shares, and expending a net amount of $43,146.22. (Dkt. No. 15, Memorandum of Law in Support of Motion of Osman Kazan to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel ("Kazan Mem."), Ex. 3).
Boilermaker suffered $776,860.54 in losses, based on a purchase of 55,707 shares, 45,337 net shares, and expending a net amount of $1,576,061.03. (Dkt. No. 19, Declaration of S. Douglas Bunch in Support of Motion of Boilermaker-Blacksmith National Pension Trust for Appointment as Lead Plaintiff and Appointment of Lead Counsel ("Bunch Decl."), Ex. C).
Rosenberg suffered $16,037 in losses, based on a purchase of 550 shares, 550 net shares (although he sold 200 shares after the class period), and expending a net amount of $34,863. (Dkt. No. 22, Declaration of Jeremy Lieberman in Support of Motion of Brian Rosenberg for Appointment *316 as Lead Plaintiff and Approval of Counsel ("Rosenfeld Decl."), Ex. C).
On each measure-losses suffered; total shares purchased; net shares purchased; and net funds expended-the Funds' expenditures or losses is greater than that of Integral Capital as well as the parties who initially moved, but have now since withdrawn their applications to serve as Lead Plaintiff. The Court therefore concludes that the Funds have the largest financial interest in relief sought by the class.
B. Rule 23
The next step in identifying which plaintiff is entitled to the presumption is to "ensure that the person (or persons) with the largest financial interest 'otherwise satisfies the requirements of Rule 23.' " Maliarov v. Eros Int'l PLC , No. 15-CV-8956, 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ). In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two of Rule 23's requirements-typicality and adequacy-are satisfied. See Ford v. Voxx Int'l Corp. , 14-CV-4183, 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015) (collecting cases); see also Martingano v. Am. Int'l Grp., Inc. , 06-CV-1625, 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) (quotations and citations omitted) ("[A]t this stage in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied.").
Typicality is satisfied "where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." In re Symbol Techs., Inc. Secs. Litig. , 2006 WL 1120619, at *3 (citing Robinson v. Metro-North Commuter R.R. Co. , 267 F.3d 147, 155 (2d Cir. 2001) ). There is no dispute all of class members' claims arise out of the same course of events-the various statements and omissions in press releases and conference calls-and that each will make similar legal arguments (under the various provisions of the Exchange Act and Rule 10b-5 thereunder). The Funds' claims would therefore, necessarily, be typical of those of all of the other class members.
The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." In re Symbol Techs., Inc. Secs. Litig. , 2006 WL 1120619, at *3 (citing In re eSpeed, Inc. Sec. Litig. , 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ; see also In re Initial Public Offering Sec. Litig. , 214 F.R.D. 117, 121 (S.D.N.Y. 2002) ).
The Funds are represented by Robbins Geller, which appears to be qualified and experienced counsel which has litigated numerous class actions; the Court concludes the firm would generally be able to conduct this litigation. (See Rosenfeld Decl., Ex. D (Resume of Robbins Geller) ). E.g., City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp. , 844 F.Supp.2d 498, 504 (S.D.N.Y. 2012) (appointing Robbins Geller as lead counsel). Nothing about the Funds' interests appears to be antagonistic to the interests of the other class members; this appears to be a fairly common class action based on alleged violations of the Exchange Act where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value that occurred after a specific statement or omission took place. E.g., *317 In re Sequans Commc'ns S.A. Sec. Litig. , 289 F.Supp.3d 416, 423 (E.D.N.Y. 2018) (citing In re Gentiva Sec. Litig. , 281 F.R.D. at 121 ("In this case, LACERS' claims, similar to the other members of the proposed class, arise from their reliance on allegedly false and misleading statements in purchasing Gentiva shares during the class period. Moreover, ... there is nothing to suggest that LACERS' claims are markedly different from other class members.") ). Finally, as noted earlier the Funds have suffered alleged losses greater than $2,000,000 and thus have a sufficient financial interest in the case's outcome to suggest they will pursue the case with vigor.
II. Lead Counsel
Under the PSLRA, "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v) ; In re Sequans , 289 F.Supp.3d at 426. The Funds are represented by Robbins Geller. As discussed, the firm is experienced in securities class action litigation, and have been appointed by judges in this Court to serve as Lead Counsel. See, e.g. , Ford v. Voxx Int'l Corp. , No. 14-CV-4183, 2015 WL 4393798, at *5 (E.D.N.Y. July 16, 2015), report and recommendation adopted by , Dkt. No. 14 (Apr. 13, 2015); Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecommunications Corp. , No. 09-CV-3007, 2010 WL 3909331, at *1-2 (E.D.N.Y. Sept. 29, 2010) (adopting report and recommendation).
The Court sees no reason to not adhere to the Funds' choice: Robbins Geller is appointed Lead Class Counsel.
Conclusion
For the reasons discussed above, the Court appoints New England Carpenters Guaranteed Annuity and Pension Funds as Lead Plaintiff, and Robbins Geller as Lead Class Counsel. The motion of Integral Capital is denied. The other motions for appointment as Lead Plaintiff and Lead Class Counsel are denied in light of their withdrawal.
SO ORDERED.

Net funds expended during the class period is the difference between the amount spent to purchase shares ($5,768,772.27) and the amount received for the sale of shares during the class period ($2,529,904.75). The Court calculated the latter from the Funds' submission by subtracting the value of the shares retained from total proceeds (($1,940,084.93-$623,990.23) plus ($1,793,880.74-$580,070.69) ). (Rosenfeld Decl., Ex. C).